TRESCA BROTHERS SAND AND GRAVEL, INC., Plaintiff, Appellant,

v.

TRUCK DRIVERS UNION, LOCAL 170, Defendant, Appellee.

No. 93–1965.

United States Court of Appeals, First Circuit.

Heard Feb. 10, 1994.

Decided March 25, 1994.

---

Robert P. Corcoran, with whom Gleeson & Corcoran, Boston, MA, was on brief, for appellant.

Raymond J. Reed, with whom Reed & Reed, Worcester, MA, was on brief, for appellee.

Before CYR, Circuit Judge, ALDRICH, Senior Circuit Judge, and STAHL, Circuit Judge.

CYR, Circuit Judge.

Tresca Brothers Sand & Gravel, Inc. (Tresca) brought suit under section 303(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 187(b), charging defendant-appellee Truck Drivers Union, Local 170 (Local 170 or the Union) with unfair labor practices during contract negotiations. Following a two-day bench trial, the district court concluded that a subcontracting proposal advanced by the Union during a strike had indeed violated both NLRA sections 8(b)(4) and 8(e), 29 U.S.C. § 158(b)(4), (e), which prohibit, respectively, compulsion against an employer to require any self-employed person to join a labor organization, and to require an employer to cease doing business with any party. The district court nevertheless found that Tresca had not established a sufficient causal link between the unlawful Union conduct and the injury Tresca allegedly sustained as a result of the strike.

In March 1991, Tresca, in coalition with four other ready-mix concrete companies (collectively "the Companies"), began contract renewal negotiations with Local 170.[1] By all accounts, negotiations were contentious from the outset. The Companies sought significant work-rule modifications (*e.g.,* a reduction from eight to four guaranteed hours' pay for each day a driver is called to work) and benefit eligibility restrictions, which the Union considered unacceptable.

The Union proposed forty-two separate modifications to the existing contract, including the elimination of the arbitration clause and the addition of a subcontracting clause, both deemed unacceptable by the Companies. After five acrimonious bargaining sessions, the parties remained at loggerheads. On May 4, 1991, the membership of Local 170 rejected the latest contract proposal by the Companies and voted to go out on strike. Although additional bargaining sessions were convened during the strike, the stalemate continued.

The focal point of this appeal is the subcontracting proposal made by the Union at the May 9 bargaining session, whereby the Companies would be required to sever their business relationships with all non-union owner-operators hauling sand and gravel for the Companies. The parties agree that the Union's May 9 proposal was unlawful.

At a June 13 bargaining session, after the Companies had filed a complaint with the National Labor Relations Board (NLRB), the Union formally withdrew the unlawful May 9 subcontracting proposal.[2] The Companies' most recent "final" contract proposal, containing demands for significant work-rule changes, was rejected by the membership of Local 170 the very next day, on June 14. In short order, the employers' coalition dissolved and individual companies began separate contract negotiations with the Union. Tresca and the Union were never able to resolve their differences. Replacement workers were hired and the strike continues to this day.

The central dispute at trial concerned the importance attached by the Union leadership and membership to the Union's unlawful subcontracting proposal and its significance in the decision to strike. The Union contended that economic issues and the work-rule concessions sought by the Companies were always at the heart of the dispute. Tresca insisted that the illegal subcontracting proposal was presented as an ultimatum by the

---

1. We outline only the background necessary to an understanding of the narrow issue presented on appeal.

2. The NLRB declined to issue a complaint. *Teamsters Local 170,* N.L.R.B. Nos. 1–CC–2363 (1–2) (Aug. 15, 1991).

Union's negotiators and dominated the contract negotiations.

## DISCUSSION

Both parties endorse the applicable legal standard as explained by the district court:

> In order to make a legal claim under Section 303(b) of the NLRA, a party must prove that it was injured "by reason of" an unfair labor practice. [This phrase] has been interpreted to mean there must be some causal nexus between the unfair labor practice and the injury allegedly suffered. *Mead v. Retail Clerks Int'l Ass'n,* 523 F.2d 1371, 1378–79 n. 9 (9th Cir.1975) (no liability if an illegal motivation is merely "an object" of a strike), *cited with approval, John B. Cruz Constr. Co. v. [United] Bhd. of Carpenters and Joiners,* 907 F.2d 1228, 1232 (1st Cir.1990); *see Feather v. United Mine Workers,* 903 F.2d 961, 965–66 (3rd Cir.1990). Under what has become known as the *Mead* test, injury occurs "by reason of" particular unlawful conduct only if that conduct "materially contributes" to the injury or is a "substantial factor" in bringing it about. *Mead,* 523 F.2d at 1376.

*Tresca Brothers Sand & Gravel v. Truck Drivers Union, Local 170,* CA No. 91–11590–T, slip op. at 3 (D.Mass. July 29, 1993). Although Tresca attempts on appeal to couch its contention as a challenge to the district court's application of the *Mead* multiple-motivation test,[3] its assignments of error all presume "clear error" in the district court's central finding of fact that "[a]t no time were the Union's subcontracting proposals ever a motivation for the strike." *Id.* at 8 (emphasis added). Obviously, unless the unlawful subcontracting proposal was *a* motivation, it could not have been a "substantial factor" in bringing about the strike; and Tresca cannot prevail on its *Mead*-test contention however characterized.

We review the district court's findings of fact for clear error. *John B. Cruz Constr. Co. v. United Bhd. of Carpenters and Joiners,* 907 F.2d 1228, 1230 (1st Cir.1990). Thus, the central finding in this case "will be given effect unless, after reading the record with care and making due allowance for the trier's superior ability to gauge credibility, [we form] 'a strong, unyielding belief that a mistake has been made.'" *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 972 F.2d 453, 457 (1st Cir.1992) (quoting *Cumpiano v. Banco Santander Puerto Rico,* 902 F.2d 148, 152 (1st Cir.1990)); *see Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."). A careful review of the entire record discloses no clear error in the finding that the unlawful subcontracting proposal was not a motivation for the strike.

First, the unlawful subcontracting proposal was not made until *after* Local 170 voted to strike Tresca on May 4. Second, Tresca concedes that the Union *membership* was never motivated by the subcontracting proposal. Third, the Union membership rejected another contract proposal by the Companies immediately *after* the Union's unlawful subcontracting proposal was withdrawn on June 13. Thus, there is no dispute that before, during, and after the time the unlawful subcontracting proposal was on the bargaining table, the Union membership was motivated by other concerns—unrelated to the subcontracting proposal—for which the membership was ready to strike. This circumstantial evidence alone provided plausible support for the district court finding.

---

**3.** Tresca argues that the district court failed to appreciate that a strike may be motivated by more than one "substantial factor," *Frito-Lay, Inc. v. International Bhd. of Teamsters, Local 137,* 623 F.2d 1354, 1363 (9th Cir.), *cert. denied,* 449

U.S. 1013, 101 S.Ct. 571, 66 L.Ed.2d 472 (1980), and that unlawful conduct may be a substantial motivating factor even though other factors standing alone would have been sufficient to

There remains only the question of the motivations of Union negotiators.[4] Tresca insists that there is uncontroverted evidence that the Union negotiators presented the unlawful subcontracting proposal as an ultimatum. The record simply does not bear this out. The witnesses presented by the parties at trial gave diametrically opposed accounts as to when the subcontracting proposal was presented and whether subcontracting was *the* key issue, as Tresca maintains, or simply a bargaining chip, as the Union claims. The only objective non-testimonial evidence presented by Tresca indicates that the subcontracting proposal first surfaced at the May 9 bargaining session. But the timing of the subcontracting proposal, while relevant, does not determine the outcome of the motivation test required under *Mead*. Rather, in the present context, the question whether the strike, or its prolongment, was motivated by the subcontracting proposal turns on the actions and *intent* of the Union representatives responsible for the decision to inject it as an element in the collective bargaining.

The chief negotiator for the Union specifically denied that the May 9 subcontracting proposal was ever presented as an ultimatum, and expressly denied that it was ever *a motivation for the strike*. The district court clearly credited the testimony of Local 170's chief negotiator.[5]

"[W]hen factual findings are based on determinations regarding the credibility of witnesses, Rule 52 demands that the appeals court accord even greater deference to the trial court's findings." *Rodriguez–Morales v. Veterans Admin.*, 931 F.2d 980, 982 (1st

Cir.1991) (citing cases); *see also Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511. Based on its credibility determination relating to the Union's motivation, and the undisputed fact that the subcontracting proposal was not a strike motivation for the Union membership, there was no clear error in the district court finding that the May 9 subcontracting proposal was not a motivation behind the strike. Accordingly, we affirm its ruling that Union liability under NLRA § 303(b) was foreclosed.

*Affirmed.*

---

prompt a strike, *see Feather v. United Mine Workers*, 903 F.2d 961, 966 n. 11 (3d Cir.1990).

**4.** The record does not support Tresca's unnatural reading that the district court's findings on motivation for the strike, *see supra* at p. 65, addressed only the motivations of the striking employees and not those of the Union negotiators. The district court finding itself contains no such qualification, nor is there any evidence that the strike *motivations* harbored by the membership differed substantially from those of the Union negotiators.

**5.** Near the end of the trial, the district court outlined for counsel the credibility problem confronting Tresca:

You have had a witness on the stand here who said that [the Union's negotiator] says "I am going to get this [subcontracting] proposal ... I have been wanting to do it a hundred years and this is life or death. Without this, nothing."

... I presume that somebody is going to corroborate it. These are the people that were there. Are they going to corroborate it or aren't they? There is no subtlety here. Either it happened or it didn't.

If it happened, you've got a slam dunk. If it didn't, you have a problem.

Trial Tr. at 42–43, July 22, 1993.