**Robert C. BEAUCHAMP,**
**Petitioner, Appellee,**

v.

**Paul MURPHY, The Superintendent of the Old Colony Correctional Center, Respondent, Appellant.**

**No. 93–2385.**

United States Court of Appeals,
First Circuit.

Heard May 3, 1994.

Decided Sept. 26, 1994.

---

William J. Duensing, Asst. Atty. Gen., with whom Scott Harshbarger, Atty. Gen., Boston, MA, was on brief, for appellant.

Joseph H. Zwicker with whom Massachusetts Correctional Legal Services, Boston, MA, was on brief, for appellee.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

This appeal presents the question whether Massachusetts was constitutionally obliged, under the circumstances of this case, to give an escaped convict credit against his Massachusetts sentence for time spent in an Illinois jail resisting extradition back to Massachusetts. The district court in a habeas corpus proceeding held that the Constitution required such a credit. We disagree, and reverse.

The facts are straightforward. On February 23, 1973, a jury found Richard Beauchamp guilty of second degree murder in Massachusetts. He received a life sentence but, under Massachusetts law, was nevertheless eligible for parole after 14 years. Scarcely a year later, on April 29, 1974, Beauchamp was released from prison on a 12-hour furlough. He fled from Massachusetts. Beauchamp thereafter lived "in various places under different names with false identification and largely by his wits and deception." *United States ex rel. Beauchamp v. Elrod*, 1987 WL 15164, *2 (N.D.Ill. 1987).

On July 6, 1981, Beauchamp was arrested on federal charges in California. Shortly thereafter, Massachusetts learned of the arrest and notified the federal authorities of the Commonwealth's desire to have Beauchamp returned to Massachusetts prison. After serving a nine-month sentence in California on federal charges, Beauchamp waived his objections to extradition to Illinois where federal mail fraud charges had been lodged against him. While there, he was convicted and sentenced to a brief term of imprisonment. After that sentence expired, he appeared on February 17, 1983, in Illinois state court on an Illinois misdemeanor charge of deceptive practice.

Illinois dismissed its misdemeanor charge on March 11, 1983, anticipating Beauchamp's extradition to Massachusetts. In April the governor of Illinois issued a rendition warrant, but Beauchamp refused to waive extradition. Instead he brought a state habeas corpus action challenging his extradition on a variety of inventive grounds. The state habeas corpus petition was denied on November 10, 1983, but by an appeal and then a rehearing petition Beauchamp delayed a final disposition until November 1985. *Beauchamp v. Elrod*, 137 Ill.App.3d 208, 92 Ill. Dec. 86, 484 N.E.2d 817 (1985).

Beauchamp then began a federal habeas corpus proceeding. In Illinois, Beauchamp claimed that the Massachusetts murder had been committed at the CIA's behest and that

Massachusetts prison officials had thereafter connived at Beauchamp's escape from Massachusetts prison. The district court held an evidentiary hearing but then denied relief, concluding that the facts alleged by Beauchamp would not in any event furnish a defense to extradition. *United States ex rel. Beauchamp v. Elrod, supra,* 1987 WL 15164, *2.

On August 7, 1987, Beauchamp was finally returned to Massachusetts. He pleaded guilty to a separate charge of escape from prison, but no separate sentence was imposed. Beauchamp then began a campaign to obtain credit, against his Massachusetts second-degree murder sentence, for a four-year period (March 11, 1983, to August 7, 1987) that he had spent in the Illinois jail while resisting extradition to Massachusetts. Although credit would not reduce his formal sentence, which was for life imprisonment, credit would reduce the wait before Beauchamp was eligible for parole.

The Massachusetts authorities were prepared to give Beauchamp credit for his very brief period in Illinois custody after his extradition challenges had failed so that Massachusetts was free to take him into custody. The authorities refused his request for any further credit, and Beauchamp then sought judicial review. The superior court granted Beauchamp's request for full credit but the Supreme Judicial Court reversed, holding that no credit was due for the time spent in Illinois resisting extradition. *Commonwealth v. Beauchamp,* 413 Mass. 60, 595 N.E.2d 307 (1992).

On October 1, 1993, Beauchamp commenced the present action for habeas corpus in the district court. 28 U.S.C. § 2254. In a thoughtful decision rendered on November 18, 1993, the district court granted the writ, ordering the state to allow the 1,574 days' credit sought by Beauchamp. The court ruled that to deny the credit would unconstitutionally burden Beauchamp's right to contest extradition. In the alternate, the court held that denial of the credit was unconstitutional retaliation by the state.

On this appeal, the Commonwealth first claims that Beauchamp did not adequately exhaust his state remedies. In the district court, as here, Beauchamp has invoked both due process and equal protection concepts. Due process underlay Beauchamp's argument that the Commonwealth has unconstitutionally burdened his right of access to the courts and impermissibly retaliated against him. The equal protection claims were of two kinds: first, that Massachusetts provides credit for time spent contesting extradition to some extradited persons but not to prison escapees; and second, that denial of such credit favors affluent fugitives over those who cannot make bail.

■ In arguing a failure to exhaust state remedies, the Commonwealth singles out the equal protection claim that Massachusetts grants credit to some extradited persons and withholds it from others based on irrational criteria. Under *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), Beauchamp's federal petition may be dismissed if he failed to present to the state courts *any* of the federal claims now asserted. The district court must dismiss such "mixed petitions," "leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Id.* at 510, 102 S.Ct. at 1199.

In his brief to the Supreme Judicial Court, Beauchamp had a separate section devoted to "state and federal guaranties of due process," whose adequacy (for exhaustion purposes) the Commonwealth does not challenge, and a section on "federal equal protection," which makes the indigency argument briefly but adequately. The equal protection argument based on irrational classification was set forth in a *prior* section, under the heading "state constitution—equal protection," which begins with a reference to "the state guaranty of equal protection." As the last paragraph of this section—after the supposedly irrational classifications have been described—the brief concludes:

Over and above state constitutional requirements governing by which branch and on what basis the rule proposed [by the Commonwealth denying credit] can be adopted, the rule violates state and Feder-

al Constitutional constraints on how, why, and upon whom a denial of liberty can be imposed. These are the constraints of Federal equal protection and due process guaranties under both Constitutions.

It is possible to read this final paragraph, as the district court apparently did, to be a federal equal-protection attack on the classifications just criticized at length in the same section of Beauchamp's brief. The more natural meaning of the paragraph may be to read it as a transition to the two sections that follow which, as mentioned above, address "federal equal protection" (where the indigency issue is discussed) and "state and federal guaranties of due process" (where the access to the courts issue is discussed).

However this may be, we have no intention of dismissing the case under *Rose v. Lundy.* The substance of the irrational classifications argument was amply explained in Beauchamp's state brief and his criticisms were not premised on any peculiarity of language in the Massachusetts Constitution or any unusual state court precedent. The Supreme Judicial Court can hardly have been misled merely because the reference to federal equal protection occurred at the end of the argument instead of the beginning. Had the caption of the argument read "federal and state constitution—equal protection," the substance would have been exactly the same.

*Rose v. Lundy* assures that state courts have the chance to pass on federal constitutional issues before federal courts intrude on the state criminal process. Where the state court has not fairly been apprised of a constitutional argument, exhaustion is required. *See Nadworny v. Fair,* 872 F.2d 1093 (1st Cir.1989). But in this context "substance rather than form" is critical, 872 F.2d at 1101, and the Supreme Judicial Court would not have viewed the matter differently if the word "federal" had appeared in the heading of the section that set out the irrational classifications argument.

We turn, therefore, to the merits and begin with the district court's holding that the denial of credit to Beauchamp impermissibly forecloses or burdens the "right of access" to the courts. Undoubtedly, Beauchamp has a constitutional right of access to the courts,

*e.g., Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977), and if Illinois had barred Beauchamp from filing a federal habeas action to challenge his detention, serious constitutional concerns would arise. We will assume *arguendo* that the federal right of access included the state habeas proceeding as well.

No one, however, prevented Beauchamp from filing his successive habeas actions in Illinois. Rather, the issue is whether Massachusetts' refusal to credit the time spent in this litigation is an *unconstitutional burden* upon Beauchamp's right of access. Here, the Supreme Court's decisions provide relatively little direct guidance. Burden issues, presenting the familiar problem of how much is too much, peculiarly depend on facts and context, and the Supreme Court has not had much to say about the relationship between extradition challenges and the refusal to credit time served in an out of state jail.

Where burdens are laid upon the exercise of constitutional rights by prisoners, the Supreme Court's current approach is to give very substantial latitude to the state's judgment. *E.g., Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *compare Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). But such cases differ because they involve the actual running of prisons and the most practical considerations of discipline, security, administrative feasibility and cost. While some of these concerns may apply in this case, they are greatly diluted when the issue is the calculation of a sentence, a task performed by an administrator with a pencil.

If one looks for analogies to our own case, the closest ones in the Supreme Court appear to be two decisions, both of which concern burdens on litigation choices provided to the defendant. In *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), the Court held it unconstitutional to subject a kidnapper to a possible death penalty if, but only if, the defendant elected a jury trial. *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), with equal firmness, held that a defendant who chooses to appeal a conviction

may, where successful, be given a higher sentence in a subsequent retrial. *Jackson* was plainly influenced by the enormity of the penalty, so that *Pearce*—where seven justices seemed unconcerned about deterring appeals—may be the more pertinent guidepost.

Taking together *Turner, Jackson* and *Pearce,* the best we can say is that the burden on the opportunity to litigate cannot be unreasonable, and reasonableness largely turns upon the facts. With some emphases peculiar to prison regulation, *Turner* itself identifies pertinent criteria: whether the state's policy serves a valid governmental interest; the extent to which the prisoner is foreclosed or burdened in exercising his rights; and the presence or absence of reasonable alternatives for the government to achieve the same ends by other means without significant cost or impairment of the governmental interest at stake. 482 U.S. at 89–91, 107 S.Ct. at 2261–63.[1]

██ In this case the governmental interest is patent: Massachusetts is entitled to shape its own sentences and, within very broad limits, is entitled to insist that a sentence of so many years means *years served in a Massachusetts prison. E.g., Boutwell v. Nagle,* 861 F.2d 1530 (11th Cir.1988), *cert. denied,* 490 U.S. 1099, 109 S.Ct. 2452, 104 L.Ed.2d 1006 (1989); *Pernell v. Rose,* 486 F.2d 301 (6th Cir.1973), *cert. denied,* 415 U.S. 985, 94 S.Ct. 1581, 39 L.Ed.2d 882 (1974). True, serving part of the sentence in Illinois may not be very different. But this is a practical matter on which views may vary. Further there is a symbolic importance to the state's ability, as a separate sovereign in criminal law enforcement, to shape its own procedures and penalties.

Turning to the impact on escaped prisoners, the denial of credit clearly does not foreclose access to the courts, and we think it unlikely that colorable claims against extradition will be discouraged. The legitimate grounds for challenging a rendition warrant are narrow and reasonably clear-cut. *See Commonwealth v. Beauchamp,* 595 N.E.2d

at 309–10. If an alleged escapee subject to such a warrant has a substantial defense to extradition and thus a fair to good prospect of avoiding a return to certain imprisonment, he or she is not likely to be discouraged by a penalty (denial of credit) that will never be visited if extradition is blocked.

Finally, there is no "ready alternative" to the denial of credit. See *Turner,* 482 U.S. at 90, 107 S.Ct. at 2262. If Massachusetts does give credit to Beauchamp, it defeats the very interest that underlies the no-credit rule: that the Commonwealth fixes the place of imprisonment, not the prisoner. "To rule otherwise would allow the defendant to choose the State where he would serve a significant portion of his sentence." *Beauchamp,* 595 N.E.2d at 310. "[T]he absence of ready alternatives is evidence of the reasonableness of a [challenged state policy]." *Turner,* 482 U.S. at 90, 107 S.Ct. at 2262.

Accordingly, if the choice is between the burden laid on legitimate challenges and the state's interest in defining its own sentences, we think that the state interest is legitimate, the burden is very light, and no obvious alternative is available to achieve the former and avoid the latter. But two further questions remain: one is whether the state's decision to deny Beauchamp credit is tainted by a retaliatory motive, and the other is whether the singling out of escaped prisoners presents an equal protection problem. We address these issues in that order.

The district court, in addition to finding an undue burden upon Beauchamp's right of access to the courts, declared that the Commonwealth sought to penalize Beauchamp for resisting extradition:

> The Department of Corrections' refusal to credit [Beauchamp's] sentence with the time he spent in custody challenging extradition cannot stand. The record suggests that in refusing Beauchamp's request for credit, the Commonwealth unconstitutionally penalized him for exercising his right to contest rendition to Massachusetts; [the Commonwealth] has not shown otherwise.

---

1. A fourth consideration mentioned in *Turner*—any ripple effect of the remedy sought upon the correctional institution and other inmates—was

linked peculiarly to prison operations and the special need for deference to corrections officials. *Id.* 482 U.S. at 90, 107 S.Ct. at 2262.

Although this may look like a "finding" of the motive for the Commonwealth's action, the situation is somewhat more complicated than that.

First, there is *no* record evidence concerning the motive of Department of Corrections' personnel who made the initial decision. Both the district court decision and Beauchamp's brief rely upon *arguments* made in the attorney general's brief in the state's highest court that "to provide credit toward [an escapee's] sentence ... for time spent contesting extradition opens the floodgates to a significant increase in extradition contests by escaped inmates."[2] We are in the same position as the district court to reason from the attorney general's written argument, so that the clear error doctrine has no application here.

In the state court proceeding, the Department of Correction also provided an affidavit from the chief of its fugitive apprehension unit making similar contentions; but this, too, was essentially a litigation document and did not suggest that Washburn had any personal involvement in making the decision to deny credit to Beauchamp. It is questionable whether either the arguments made in the state's brief or the Washburn affidavit amount to anything more than a kind of "*post hoc* rationale" that courts do not normally accept as a basis for appraising administrative action. *NLRB v. Yeshiva Univ.*, 444 U.S. 672, 678 n. 22, 100 S.Ct. 856, 858 n. 22, 63 L.Ed.2d 115 (1980). In any event, neither document suggests any individualized attempt to target Beauchamp.

Second, we do not think that unconstitutional retaliation is involved even if we assume *arguendo* that the correctional authorities do believe that giving credit would spur time-wasting challenges to extradition. General rules often rest upon multiple considerations, and concerns about abusive litigation underlie a number of *federal* rules adopted by the courts themselves. These include restrictions on habeas corpus itself, *e.g.*, *McCleskey v. Zant*, 499 U.S. 467, 491, 111

S.Ct. 1454, 1468, 113 L.Ed.2d 517 (1991), and sanctions under Fed.R.Civ.P. 11, not to mention various common law torts such as malicious prosecution.

■ The Commonwealth's policy, even if resting in part on litigation concerns, seems to us a mile away from a warden's decision to disadvantage a prisoner *because* that prisoner filed a law suit against the warden. This is not, or at least has not been shown to be, a case of individual retaliation for pursuing constitutional rights. At most, as one element in a legitimate decision generally to deny credit to escaped prisoners for time spent outside Massachusetts, the state has given some weight to the benefits of getting the escapee back promptly where he or she belongs.

■ We turn finally to the claim that Massachusetts has denied equal protection to Beauchamp, a claim not addressed by the district court but advanced by Beauchamp as an alternative basis to sustain the judgment. Beauchamp is entitled to defend the district court's judgment on any properly preserved ground that would serve to sustain it, whether or not adopted by the district court. *E.g.*, *Martin v. Tango's Restaurant*, 969 F.2d 1319, 1325 (1st Cir.1992). The equal protection claim based on indigency made in state court has not been renewed before us. *Cf. Palmer v. Dugger*, 833 F.2d 253 (11th Cir. 1987). We proceed, therefore, to Beauchamp's claim that Massachusetts applies its no-credit rule based on irrational classifications.

■ As the foundation for his argument, Beauchamp asserts that "Massachusetts awards sentence credit to parole violators and pre-trial detainees for time served in other states contesting extradition to Massachusetts." It is true that by statute, Massachusetts requires that prisoners be credited with time served during *pretrial* detention. Mass.Gen.L. ch. 127, § 129B, ch. 279, § 33A. Another statute denies credit to a parole

---

**2.** The district court does say that if Beauchamp had not contested extradition, he would have received credit for time spent in Illinois "for those same days of imprisonment." But those "same days" would never have existed if Beau-

champ had agreed to extradition, and in fact Massachusetts did credit Beauchamp with the very brief time spent in Illinois after his extradition contest failed and he was available to Massachusetts.

violator for time spent out of prison during revocation proceedings. *Id.*, ch. 127, § 149. Where no statute applies—as in the case of time spent in detention out of state while resisting extradition—the Massachusetts courts apply a test of fairness.[3]

█ Other than *Beauchamp* the only other decision by the Supreme Judicial Court involving an escaped prisoner is *Chalifoux*. In that case, the escapee was sentenced to time by a California court intended to be served concurrently, in Massachusetts, upon extradition there. Massachusetts refused to accept immediate rendition because of overcrowding and then, after the California sentence had been served, refused to reduce the Massachusetts sentence for the time spent in California. On fairness grounds, the Supreme Judicial Court ordered a credit. Taking the two cases together, we think that the prevailing practice in Massachusetts is apparently to deny credit to escaped prisoners for time spent litigating extradition, absent extraordinary circumstances or distinct equities.[4]

█ One must tread cautiously in generalizing about equal protection, for there are countless Supreme Court precedents that cannot all be reconciled even in hundreds of pages of erudite discussion. *See, e.g.,* L. Tribe, *Constitutional Law* 1436–1672 (2d ed. 1988). The classification here, however, is between prison escapees and other fugitives and is far from any previously deemed suspect. *Compare, e.g., Palmore v. Sidoti,* 466 U.S. 429, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984) (racial classification). Similarly, the classification does not in any sense deprive or deny to anyone a fundamental right; at most, it may impose a conjectural and incidental burden unlikely to discourage any substantial objections to extradition.

Since there is no suspect classification here involved, nor any deprivation of fundamental rights, the ordinary equal protection test is extremely deferential. The standard formula is that a non-suspect classification is unconstitutional only if no legitimate basis can be imagined to support it. *E.g., Harrah Independent School District v. Martin,* 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979). And "support" means only that a legislature—or, here, a state court acting in its stead—could provide a rational basis for the choice. *E.g., Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979).

█ Turning to the distinctions assertedly drawn by Massachusetts, pretrial detainees (whether held in Massachusetts or held outside the state while contesting extradition) are a peculiarly sympathetic case for credit; these are presumptively innocent individuals held primarily to assure their presence at trial. Credit for such detention is widely available. There is nothing whatever irrational about a general rule that pretrial detention time should be credited as a matter of course, nor does it conflict with a presumptive rule against credit for time spent out of state by one who is convicted and later escapes from prison.

A closer case is presented by the fact, if fact it is, that credit is given to a parolee who violates parole, flees the state and then contests extradition back to Massachusetts.[5] But an escape from prison, even by one on a 12–hour pass, can rationally be treated as a more serious default than a parole violation. By the same token the state may take a more sympathetic view of time spent in detention out of state by one who was out on liberty than by one who was suppose to be residing in a Massachusetts prison. Again, the distinction is not irrational.

**3.** *E.g., Beauchamp,* 595 N.E.2d at 309; *Chalifoux v. Commissioner of Correction,* 375 Mass. 424, 377 N.E.2d 923, 926 (1978); *Commonwealth v. Grant,* 366 Mass. 272, 317 N.E.2d 484, 486–87 (1974); *Brown v. Commissioner of Correction,* 336 Mass. 718, 147 N.E.2d 782, 784 (1958).

**4.** *See also In re Kinney,* 5 Mass.App.Ct. 457, 363 N.E.2d 1337, 1338 (1977) (stating the general rule that an escape "suspend[s] the running of

the original sentence until such time as [the defendant] should be returned to" the institution from which he escaped).

**5.** The state has submitted a letter agreeing that this is the policy followed and arguing that it is consistent with Mass.Gen.L. ch. 127, § 149. *See also Blake v. Rapons,* C.A. No. 91–0795B (Mass.Super.Ct., April 21, 1991).

Beauchamp says that these supposed exceptions undercut any assertion by the Commonwealth that it is interested in having a Massachusetts sentence served only in Massachusetts jails. But a legitimate interest does not cease to be so because rational exceptions are made on account of countervailing general concerns or individual equities. Here, some of the exceptions are more compelling than others, but none involves a suspect classification or is outside the bounds of minimal rationality so as to violate the equal protection clause of the 14th Amendment.

■ Beauchamp's final claim is that the denial of credit violates the Fifth Amendment's prohibition against double jeopardy made applicable to the states through the 14th Amendment's due process clause. The Supreme Court precedent relied upon by Beauchamp is *North Carolina v. Pearce*, a different aspect of which was discussed above. In *Pearce* a defendant served part of his sentence for an offence before getting the conviction overturned on appeal. Then on retrial he was convicted and resentenced. In the new sentence, Pearce was denied credit for the time he served incident to the first conviction for the same crime.

In the ruling relied on by Beauchamp, the Supreme Court held that this denial of credit violates the double jeopardy clause's prohibition against "multiple punishments for the same offense," 395 U.S. at 717, 89 S.Ct. at 2076, observing:

[T]his basic constitutional guarantee is violated when punishment already exacted for an offense is not fully "credited" in imposing sentence upon a new conviction for the same offense.

*Id.* at 718, 89 S.Ct. at 2077. We think that the formal holding of *Pearce* on this issue has no application to Beauchamp. In our case, the time spent in Illinois was not formally a "punishment" for the Massachusetts second-degree murder conviction but a decision by Illinois to hold Beauchamp—who had already fled once—pending extradition to complete his Massachusetts sentence.

Formalities deserve weight in applying a fairly technical constitutional prohibition such as the double jeopardy clause. That is the lesson of the Court's further holding in *Pearce* that a stiffer sentence on retrial after a successful appeal does not offend the clause. See 395 U.S. at 711, 89 S.Ct. at 2072. The same formal approach is implicit in the even more famous holding that separate state and federal punishments for the same conduct do not violate the double jeopardy clause. *E.g., Heath v. Alabama,* 474 U.S. 82, 89, 106 S.Ct. 433, 437, 88 L.Ed.2d 387 (1985).

■ The force of Beauchamp's argument does not lie on the technicalities of double jeopardy. Its essence is a due process appeal to concepts of fundamental fairness: after all, but for the Massachusetts detainer, Beauchamp would not have spent four years in an Illinois jail; and the result of denying him credit is to hold him in custody, if the Illinois and Massachusetts terms are combined, for more than the minimum term otherwise available in Massachusetts. This argument would have special force if, for example, a state denied credit to a convicted prisoner for time spent in pretrial detention.

But this is a one-sided portrayal of the events in this case. Beauchamp's stay in the Illinois jail is causally related not only to his Massachusetts sentence but also to his own action in escaping from Massachusetts prison and then resisting extradition (mainly on spurious grounds). And, as we have explained above, Massachusetts has a legitimate, if partly symbolic, interest in having the full sentence served in its own prison. To deny Beauchamp credit is simply not a case of fundamental unfairness in the constitutional sense. *Compare Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

The Massachusetts rule could strike some observers as a severe one, but an arguably severe rule is not automatically unconstitutional. Where as here the underlying issue is one of minimum fairness and rationality, a federal court polices the outer perimeter. Where issues are ones on which rational and civilized men and women can reasonably differ, the resolution of such choices is not for us.

*Reversed.*

BOWNES, Senior Circuit Judge, dissenting.

The court has written a very persuasive opinion. This is due to a combination of two factors: the outstanding skill and writing style of the author; and its invocation of the doctrine of "fundamental fairness" to reach a result that seems at first blush to be fair and just. After all, why should an escaped felon be rewarded for resisting extradition to the state from which he fled prison? I dissent, however, because I think the court's opinion does not meet head-on an important constitutional issue raised by petitioner. This issue was, in my judgment, squarely confronted and correctly decided by the district court.

With respect, I do not think that the basic issue is "fundamental fairness"; instead, I believe it is whether petitioner's constitutional right of access to the courts was violated. For the reasons that follow I think that this constitutionally guaranteed right was abridged.

An inmate has no independent federal constitutional right to credit on a sentence lawfully imposed by one state, for time spent in the custody of another state, absent a statute in the sentencing state so providing. *See Boutwell v. Nagle*, 861 F.2d 1530, 1531 (11th Cir.1988), *cert. denied*, 490 U.S. 1099, 109 S.Ct. 2452, 104 L.Ed.2d 1006 (1989); *Palmer v. Dugger*, 833 F.2d 253, 254 (11th Cir.1987). Petitioner does not have a constitutional right to credit for the time spent in custody in Illinois fighting extradition to Massachusetts. The question is whether the practice of the Massachusetts Department of Corrections (DOC), pursuant to which he was denied credit, amounts to retaliation against escapees who exercise their right of access to the courts.

It is well settled that prisoners, no less than any other citizens, have a constitutional right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935

(1974); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). "[S]tates have an *affirmative* obligation to assure that inmates have meaningful access to courts." *Germany v. Vance*, 868 F.2d 9, 14 (1st Cir. 1989) (internal quotation marks and citation omitted); *see also Bounds*, 430 U.S. at 832–34, 97 S.Ct. at 1500–01.[6]

The right of access has been developed primarily in prisoner cases where the inmate seeks to challenge the conditions of his confinement or his underlying conviction. *See Crowder v. Sinyard*, 884 F.2d 804, 811 (5th Cir.1989), *cert. denied*, 496 U.S. 924, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990). These cases generally concern the adequacy of prison libraries, access to legal assistance, or the availability of pens, paper, postage and other non-legal materials without which court documents cannot be drafted. *See, e.g., Alston v. DeBruyn*, 13 F.3d 1036 (7th Cir.1994) (denial of access to law library and adequate legal assistance); *Petrick v. Maynard*, 11 F.3d 991 (10th Cir.1993) (inadequate law library); *Davidson v. Smith*, 9 F.3d 4 (2d Cir.1993) (destruction of inmate's legal materials); *Gluth v. Kangas*, 951 F.2d 1504 (9th Cir. 1991) (high postage, copying and supply costs); *Ching v. Lewis*, 895 F.2d 608 (9th Cir.1990) (right of access includes attorney visitation); *see also Bounds*, 430 U.S. at 824–25, 97 S.Ct. at 1496 ("[I]ndigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them."). The right of access is not, however, limited to such cases. As the Supreme Court held in the context of a diversity tort action nearly a century ago:

> The right to sue and defend in courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship ... granted and protected by the federal constitution.

**6.** Although the Supreme Court has, at various times, viewed the right of access as one aspect of the Due Process Clause of the Fourteenth Amendment, the First Amendment right to petition government for grievances, and the Privileges and Immunities clause of Article IV, section 2 of the Constitution, *see generally Germany*, 868 F.2d at 17 & n. 9, we believe that it is most appropriate to view the Due Process Clause as the source of that right. *Id.* at 17.

*Chambers v. Baltimore & Ohio R.R.,* 207 U.S. 142, 148, 28 S.Ct. 34, 35, 52 L.Ed. 143 (1907). And at least, one court of appeals has explicitly rejected the proposition

> that a prisoner's right of "adequate, effective, and meaningful" access to the courts, as recognized by the Supreme Court in *Bounds v. Smith,* is limited to the presentation of constitutional, civil rights, and habeas corpus claims.... [T]he *Bounds* opinion was primarily concerned with constitutional and civil rights claims and with the minimum legal resources that prisons must afford to inmates to ensure effective access to the courts. Recognition of the constitutional right of access to the courts, however, long precedes *Bounds,* and has from its inception been applied to civil as well as constitutional claims.

*Jackson v. Procunier,* 789 F.2d 307, 311 (5th Cir.1986) (collecting cases); *accord Straub v. Monge,* 815 F.2d 1467, 1470 (11th Cir.), *cert. denied,* 484 U.S. 946, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987). The constitutional right of access to the courts is broad, and is not limited to an inmate's right to challenge conditions of confinement or an underlying conviction. It covers an inmate's right to bring a divorce action, *Corpus v. Estelle,* 551 F.2d 68, 70 (5th Cir.1977), and a common law nuisance lawsuit, *Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1427–28 (8th Cir.1986). I believe that it also encompasses the right of an escaped felon to challenge his extradition.

Under Illinois law petitioner had a statutory right to challenge his extradition. *See* 725 ILCS 225/10 (Smith–Hurd 1992). Petitioner also had a federal right to challenge his extradition through a habeas corpus proceeding in federal court. *Crumley v. Snead,* 620 F.2d 481, 483 (5th Cir.1980) (citing *Roberts v. Reilly,* 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544 (1885)).

It is now firmly established that an act taken in retaliation for the exercise of a constitutionally protected right is forbidden, even if the act, if taken for a different purpose, would have been proper. *McDonald v. Hall,* 610 F.2d 16, 18 (1st Cir.1979); *Matzker v. Herr,* 748 F.2d 1142, 1150 (7th Cir.1984). Retaliation by prison officials against an in-

mate for pursuing legal action constitutes interference with that inmate's right of access to the courts. *McDonald,* 610 F.2d at 18; *see also Smith v. Maschner,* 899 F.2d 940, 947 (10th Cir.1990); *Valandingham v. Bojorquez,* 866 F.2d 1135, 1138 (9th Cir. 1989). Thus, although an inmate may not, for example, have a constitutional right to remain in a particular institution or hold a particular job assignment, prison officials may not transfer him or deny him a job assignment in retaliation for the exercise of a constitutionally protected activity. *See Williams v. Meese,* 926 F.2d 994, 998 (10th Cir.1991) (inmate transfer cannot be used as retaliation); *Howland v. Kilquist,* 833 F.2d 639, 644 (7th Cir.1987) (same); *McDonald,* 610 F.2d at 18 (same). The same rationale applies to the denial of credit against a prisoner's sentence for time spent in another state's custody while challenging extradition.

In addressing petitioner's claim of retaliation, the district court found:

> The circumstances of this case ... strongly suggest the presence of a retaliatory response to a prisoner's exercising his constitutional right of access to the courts. The facts indicate a reasonable likelihood that in denying Beauchamp's request that it credit his sentence with the time he spent in custody in Illinois solely on the basis of the Massachusetts escape charges, the Commonwealth's Department of Corrections impermissibly penalized him for invoking his statutory right to challenge rendition. Undisputedly, only because Petitioner invoked his right to contest extradition was he deprived of sentencing credit for 1,574 days he spent in custody; had he waived extradition and returned immediately to Massachusetts' custody, he would have received full credit for those same days of imprisonment.

*Beauchamp,* slip op. at 13. We review the district court's factual finding of retaliation for clear error, and will reverse only if we are firmly and unequivocally convinced that an error has been committed. *See Tresca Bros. Sand & Gravel v. Truck Drivers Union, Local 170,* 19 F.3d 63, 65 (1st Cir.1994); *American Title Ins. Co. v. East West Financial,* 16 F.3d 449, 453 (1st Cir.1994). In

other words, if the district court's factual finding is plausible based on a whole-record review, we must affirm even if we would have reached a different result in the first instance. *See Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

The district court inferred the existence of retaliation from the fact that respondent had previously argued that the denial of credit to petitioner for the time he served in Illinois challenging extradition was essential to discourage extradition contests by escapees. Respondent argues that this is not enough on which to base a finding of retaliation, and that "[p]ositive evidence of retaliatory action is necessary." Brief for Respondent at 24. Although I am not sure what respondent means by "positive," I assume that it means direct as opposed to circumstantial evidence.

Time and time again courts have stressed that "[p]recisely because the ultimate fact of retaliation turns on defendants' state of mind, it is particularly difficult to establish by direct evidence." *Smith,* 899 F.2d at 949 (citing *McDonald,* 610 F.2d at 18). Thus, circumstantial as opposed to direct evidence may be enough to support a finding of retaliation. *See Mesnick v. General Elec. Co.,* 950 F.2d 816, 828 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). In the present case, however, there was direct evidence in the record to support petitioner's allegation of retaliation. In the Superior Court of Massachusetts, respondent submitted evidence showing how quickly escapees are generally returned to Massachusetts after being apprehended. It then argued that petitioner should not be credited for his Illinois time because doing so would improperly provide escapees with an incentive to challenge extradition. Clearly, respondent was advocating that petitioner's claim for credit should be denied so that other escapees would be deterred from challenging extradition in the future, despite their established right to do so. My review of the record leads me to conclude that there was sufficient evidence from which a rational factfinder could find that petitioner was retaliated against for having challenged his extradition. And this is as far as an appellate court can go. I believe that the court had no choice but to uphold the district court's finding that respondent impermissibly retaliated against petitioner for exercising through habeas corpus proceedings his right of access to the courts.

The court neatly avoids the issue of retaliation by pointing out that petitioner himself was not denied access to the courts. This ignores the fact that petitioner's claim for credit was denied by DOC to discourage the bringing of such claims in the future, regardless of the merits, and in the face of the recognized right of escaped felons to contest extradition in the courts.

As part of its "fundamental fairness" rationale the court, in effect, finds that petitioner's basis for contesting extradition had no merit. I do not think that the right of access to the courts hinges on the probability that a given claim will succeed. The resolution of the constitutional question should not turn upon a *post hoc* determination that petitioner's extradition challenges were frivolous.

It is settled that, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). Although *Turner* concerned prison rules and regulations, I see no reason why its rationale should not apply to other prison actions that threaten an inmate's access to the courts, such as the denial of credit on a sentence, as in the case at bar. *Cf. Frazier v. Dubois,* 922 F.2d 560, 562 (10th Cir.1990) (applying *Turner* to inmate transfer).

In conducting a *Turner* analysis, the district court found it dispositive that "[r]espondent ... [had] proffer[ed] no legitimate penological interests which might justify the Commonwealth's response to Petitioner's exercise of his right to challenge rendition." *Beauchamp,* slip op. at 15. Respondent has repeated its omission by failing to provide this court with any penological interests that are advanced by denying sentence credit to petitioner. Those interests (real or imagined) did not prevent the Commonwealth from crediting the petitioner with the time he spent in Illinois *after* his extradition chal-

lenge. *See ante* at 706 n. 2. This belies the court's characterization of the no-credit rule as a "decision generally to deny credit to escaped prisoners for time spent outside Massachusetts," *ante* at 706. Application of the rule only to the time associated with the petitioner's exercise of his constitutional right bolsters the inference that the denial of credit was retaliatory. *See supra* at 704–05. Respondent simply argues that the *Turner* analysis is inappropriate in the case at bar. *See* Brief for Respondent at 23–24. But respondent does not explain why this is so, nor does it offer an alternative test. Respondent does argue that principles of federalism require this court to defer to state court decisions to credit or not to credit a prisoner's sentence with time served in another state. I have been unable to find any legal basis for respondent's theory.

I recognize that prison administrators must be given wide latitude in formulating policies and procedures for running their prison systems, *see Procunier v. Martinez*, 416 U.S. at 405, 94 S.Ct. at 1807 ("courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform"), particularly where state prisons are involved, *see Turner*, 482 U.S. at 85, 107 S.Ct. at 2259 ("Where a state penal system is involved, federal courts have ... additional reason to accord deference to the appropriate prison authorities."). States, however, cannot implement, without justification, practices or policies that interfere with the exercise of prisoners' constitutional rights. *See id.* at 89–90, 107 S.Ct. at 2261–2262. While there may exist some legitimate penological interest that would justify denying petitioner credit for the time he served in Illinois, I can only speculate as to what it might be.

Petitioner is not a person who evokes sympathy. Nor does his plight suggest that a great injustice has been done him. Nevertheless, he has raised an important constitutional issue involving the right of access to the courts. And I do not think that the issue should be avoided by masking it in the garb of "fundamental fairness." The court today decides that a Massachusetts escaped felon has no right to credit against his time spent in custody while exercising his undoubted

right to contest extradition. I respectfully disagree. For the reasons stated herein I would affirm the judgment of the district court. I, therefore, dissent.