James ROSS, Appellant,

v.

J.M. JONES, K.A. Wandrey, Robin Webb and Larry Dittner, Appellees.

No. 88–1569.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1989.

Decided Oct. 19, 1989.

Brock M. Weidner, St. Ann, Mo., for appellant.

Kelly Mescher, Jefferson City, Mo., for appellees.

Before BEAM, Circuit Judge, and HEANEY and BRIGHT, Senior Circuit Judges.

HEANEY, Senior Circuit Judge.

James Ross, an inmate at the Missouri State Penitentiary, filed a complaint under 42 U.S.C. § 1983, alleging that certain employees of the Missouri Training Center for Men in Moberly, Missouri, violated his fourteenth amendment right to due process while he was imprisoned at the Center. Ross appeals from a jury verdict in favor of the defendants and seeks a new trial. We affirm.

BACKGROUND

On November 14, 1985, an inmate at the Center accused Ross and another inmate of sexual assault. Ross was placed in pre-hearing detention, pending an investigation of the allegations. Ross' pre-hearing detention was authorized by Keith Wandrey, the assistant watch officer at the time. Ross testified that he was present when the victim accused him of the crime and allowed an institutional investigator to

gather physical evidence from him to complete a packaged sexual assault kit. The evidence was subsequently sent to the Missouri Highway Patrol laboratory for forensic analysis.

According to Robin Webb, Ross' case worker at the Center, the Center's rules require that a classification team meet with an inmate in pre-hearing detention within three working days to determine whether the case should be referred to an Adjustment Board for adjudication.[1] She testified that she and another employee, acting as a classification team, visited Ross on November 19 and November 22 to review the reasons for his detention. The team decided to refer the case to the Adjustment Board. She also stated that an Adjustment Board met with Ross on November 27 and decided to transfer him to the Special Management Unit (SMU),[2] pending the return of the lab tests.

Raymond Newberry, chief investigator at the Center, testified that the lab report from the Highway Patrol was completed on February 28, 1986, sent to the prison on March 3, 1986, and forwarded to him on March 5, 1986. He stated that the lab report indicated that the semen on the victim positively matched Ross' blood group. Newberry related that information to Webb, who wrote out a misconduct report on March 14, 1986.[3] According to Larry Dittner, the functional unit manager of Housing Unit 4, Ross was given a copy of this report and interviewed by an officer that same day.

On March 17, a second classification team met with Ross and informed him of the charges and the evidence against him. The team told Ross that his case was being referred to an Adjustment Board for a final adjudication of his guilt or innocence.

The Adjustment Board held its hearing on March 24, 1986. At that time, Dittner read to Ross the report from the Highway Patrol and the misconduct violation. The Board found Ross guilty of the sexual assault and recommended to the Superintendent of the prison, Jim Jones, that he be transferred to another institution and that his canteen spending be reduced for a month. The Board rejected any extension of his conditional release date.

Ross testified at trial that he was not told of the reason for his detention on November 14, 1985. He stated that he had met with Webb on November 19 but that she only talked to him about contraband in his possession and did not discuss with him the alleged sexual assault. He admitted, however, being present when accused of the crime. He also alleged that he never received a copy of his detention order, although prison officials testified that he had seen the order. Ross stated that he first learned of the reason for his detention

---

1. Pre-hearing detention is temporary detention by a prison employee, made with the approval of the watch officer, pending a hearing by the classification team, when an inmate is suspected of serious wrongdoing or when he is suspected as a perpetrator of a crime. Missouri Training Center for Men (MTMC) Regs. § 2–312.060.02. All inmates in pre-hearing detention must be given a personal hearing by the classifications team no sooner than twenty-four hours after, but within three working days following, detention. MTMC Regs. § 20–312.060.04.

2. SMU is used:
 for inmates who are incorrigible, who exhibit a habitual pattern of serious misconduct, who must be confined on suspicion of serious misconduct pending investigation, who must be held as material witnesses to criminal acts, who have been found guilty by the Adjustment Board of committing serious acts of misconduct, or who must be held to prevent serious injuries to themselves or others.

MTCM Regs. § 20.312.060.01.

3. The misconduct report provided:
 On the above date and approximate time, Inmate John Sullivan #154583 reported to the Rotunda of Housing Unit 4 and stated he had been raped by James Ross 44890 and Mike Jackson 152523 in room 4A–964. Ross followed Sullivan to the Rotunda at the time Sullivan reported the rape.
 Results of tests made on evidence, taken at the time the rape was reported, have been received from the Missouri State Highway Patrol Crime Lab. Reports indicate that semen present on the rectal area of the victim prove a positive match to Inmate Ross' blood group substances. Results of evidence testing substantiate statements that the victim, John Sullivan, was forcibly engaged in sexual misconduct without his consent and by willful actions of James Ross, constitute violation of rule #6 Forcible Sexual Misconduct.

sometime between November 14 and November 27 when he filed a state habeas claim. This testimony appears consistent with that of Webb, who stated that she met with Ross twice during this time period. Ross also alleged that he filed grievances with the Superintendent on February 14, 1986, and March 19, 1986, in an attempt to learn what information the prison officials had gathered in his case. His requests were denied.

Ross' theory at trial was that, under Mo.Rev.Stat. § 217.375, an inmate placed in pre-hearing detention has a right to a hearing on the merits of the conduct violation within seventy-two hours,[4] that no hearing on the merits occurred for five months, and that the failure to hold a hearing within the statutory time period violated his right to due process.[5] Ross sought a jury instruction incorporating this theory:

> Your verdict must be for the Plaintiff if you believe that Defendants did not afford Plaintiff a hearing within 72 hours following initial detention as required by Missouri law.

The judge rejected this proposed instruction. Instead, the judge instructed the jury:

> Your verdict must be for plaintiff if you believe by a preponderance of the evidence:
>
> First, that plaintiff had a right to a hearing within 72 hours of his confinement in pre-hearing detention, and

Second, that defendants failed to provide a hearing within 72 hours, and

Third, that plaintiff was denied his rights to notice of the charge against him and an opportunity to defend, and

Fourth, plaintiff was thereby damaged.

Jury Instruction No. 8. The jury returned with a verdict in favor of the defendants. On appeal, Ross challenges the accuracy of Instruction No. 8, as well as the decision of the trial court to allow into evidence Ross' prior convictions and sentences.

## DISCUSSION

### A. JURY INSTRUCTION NO. 8

 Our role in reviewing jury instructions is to determine whether the instructions, taken as a whole and viewed in light of the evidence and the applicable law, fairly and adequately submitted the issues in the case to the jury. *Jones v. Board of Police Commissioners*, 844 F.2d 500, 504 (8th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2434, 104 L.Ed.2d 990 (1989). An error in instructing the jury in a civil case does not require reversal if it is more probably than not harmless. *Benigi v. City of Hemet*, 868 F.2d 307, 312–13, *as amended*, 879 F.2d 473 (9th Cir.1989).

 Ross argues that the provision of Mo.Rev.Stat. § 217.375 requiring a hearing within seventy-two hours creates a liberty

---

**4.** Mo.Rev.Stat. § 217.375(2) provides:

When it is determined by the chief administrative officer of an institution that an inmate is an immediate security risk, or an inmate is violent, struggling or creating sufficient disturbance to indicate that he is not in control of himself, or an inmate is physically violent, or an inmate is in urgent need to be separated from others for his own safety or that of others, the chief administrative officer of the institution may transfer the inmate to an administrative segregation unit which shall be situated so that the segregation of such inmates from the other inmates of the institution shall be in all respects complete. *A hearing shall be held concerning the incident within seventy-two hours.*

**5.** He also alleged that he was denied the right to review the documentary evidence against him to determine its validity and that the Superintendent arbitrarily extended Ross' conditional release date after the Board recommended that

this action not be taken. First, all agree that Ross never received a copy of the Highway Patrol lab report. Prison officials, however, did notify Ross of the contents of this report in the written misconduct report. Furthermore, Dittner, who acted as the chairman of the Adjustment Board, testified that he read the report to Ross during the hearing. We do not understand why the prison officials did not make a copy of the report available to Ross before the hearing but do not believe that the failure to do so violated Ross' due process rights in this case. The record indicates that Ross had notice of the report's contents prior to the March 24 hearing. Second, Ross' allegation regarding the extension of his conditional release date is not supported by the facts. The Superintendent recommended that Ross' release date be extended but that action was not taken with regard to this violation. *See* Trial Transcript at 3.

interest protected by the due process clause of the United States Constitution. The challenged instruction, he asserts, placed the determination of a legal question, i.e., whether he had a right to a hearing, in the hands of the jury. Furthermore, he argues that the instruction required him to prove more than was required under federal or state law. We do not reach the constitutional issue raised by Ross because, even if section 217.375 creates a protectable liberty interest in a hearing within seventy-two hours and the challenged instruction inadequately stated the law, there is sufficient evidence to support the jury's finding that Ross received a hearing within seventy-two hours of being placed in administrative segregation.

The jury was asked to determine whether Ross received due process within seventy-two hours. *See Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983) (minimum requirements of due process include an informal, nonadversary review of the information supporting an inmate's confinement in administrative segregation). In the present case, the weight of the evidence at trial indicates that no due process violation occurred with respect to Ross' pre-hearing detention. Ross admitted that he talked with Webb within three working days after his initial detention. He was informed of the charges against him, both at the time of his initial confinement and during his interview with Webb. The record indicates that Ross gave a statement to an investigating officer on the day he was locked up, asserting that he was in another section of the prison during the alleged assault. Thus, the evidence supports the jury's verdict that Ross knew of the charge against him, had an opportunity to respond to that charge and discussed the charge with Webb, all within the seventy-two hour time period. For this reason, we affirm the jury's verdict.

## B. ADMISSION OF EVIDENCE OF FELONY CONVICTIONS

Ross alleges that the evidence of his prior convictions and sentences unduly prejudiced the jury against him. During the cross-examination of Ross, counsel for defendants introduced evidence that Ross had been convicted of rape and kidnapping and that he was serving a twelve-year sentence for those crimes. When reviewing decisions to admit evidence, this Court will determine whether the evidence is admissible and whether the trial court abused its discretion in determining its admissibility. *SCNO Bargelines, Inc. v. Anderson Clayton & Co.,* 745 F.2d 1188, 1192 (8th Cir. 1984).

In this case, counsel for the defendants sought to impeach the credibility of a witness. Under Fed.R.Evid. 609(a)(1), evidence of a witness' criminal conviction within the last ten years is admissible in civil cases to impeach the credibility of that witness, regardless of its prejudicial effect. *Green v. Bock Laundry Mach. Co.,* —— U.S. ——, 109 S.Ct. 1981, 1993, 104 L.Ed.2d 557 (1989). Thus, the evidence was admissible.

Accordingly, we affirm the jury verdict in favor of the defendants.