# United States Court of Appeals

## For the First Circuit

---

No. 00-1678

WAYNE AINSWORTH, et al.,
Plaintiffs, Appellants,

v.

PHILLIP STANLEY,[*]
COMMISSIONER, NEW HAMPSHIRE DEPARTMENT OF CORRECTIONS,
Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

---

Before

Boudin, Chief Judge,

Torruella, and Lipez, Circuit Judges

---

Michael J. Sheehan, Esq. for appellants.

Andrew B. Livernois, Assistant Attorney General, with whom Philip T. McLaughlin, Attorney General of the State of New Hampshire was on brief, for appellee.

---

December 24, 2002

---

[*] Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, we hereby substitute the current Commissioner Phillip Stanley for the late Henry Risley.

**LIPEZ, Circuit Judge**.  A group of convicted sex offenders brought this action against the New Hampshire Department of Corrections ("DOC"), claiming that the DOC violated their Fifth Amendment right against self-incrimination by requiring them to disclose their histories of sexual misconduct to participate in the DOC's Sex Offenders Program ("SOP").

The district court granted the DOC's motion to dismiss in May 2000, see Ainsworth v. Cantor, No. Civ. 99-447-M, 2000 WL 1499495 (D.N.H. May 18, 2000).  An appeal followed.  In April 2001, we issued an opinion affirming the district court, see Ainsworth v. Risley, 244 F.3d 209 (1st Cir. 2001), and in July 2001 appellants petitioned the United States Supreme Court for a writ of certiorari.  The Court did not immediately act on the petition.

In June 2002 the Supreme Court decided McKune v. Lile, 536 U.S. ____, 122 S. Ct. 2017 (2002), involving a similar challenge to Kansas's sex offender treatment program.  By a five-to-four vote, the Court upheld the constitutionality of the Kansas program.  There was, however, no majority opinion.  A plurality of four justices found that the Kansas program "does not compel prisoners to incriminate themselves in violation of the Constitution." Id. at 2026 (plurality opinion).  Justice O'Connor, writing a separate concurrence, agreed with the result reached by the plurality, but expressly disagreed with its reasoning. See id. at 2032–33 (O'Connor, J., concurring in the judgment).  Four

-2-

dissenting justices would have held the Kansas program unconstitutional. See id. at 2035 (Stevens, J., dissenting).

Shortly after the Supreme Court's decision in McKune, the Court granted the Ainsworth plaintiffs' petition for certiorari and summarily vacated our earlier decision, remanding the case for further consideration in light of McKune. See Ainsworth v. Stanley, 536 U.S. ____, 122 S. Ct. 2652 (2002) (mem.). We then gave the parties an opportunity to file supplemental briefs addressing the effect of McKune on our prior opinion. Now, upon due consideration of McKune and the parties' submissions, we once again affirm the decision of the district court.

**I.**

Kansas's Sexual Abuse Treatment Program ("SATP") and New Hampshire's SOP share many attributes. For example, both programs require participants to accept responsibility for their crimes as well as divulge their sexual histories and any other sexual offenses they may have committed. In addition, neither program offers immunity from prosecution for any statements made in connection with the program. Compare McKune, 122 S. Ct. at 2022-25 (describing Kansas program), with Ainsworth, 244 F.3d at 210-212 (describing New Hampshire program). The two states' programs, however, differ in a number of respects. For example, in McKune the plaintiffs were ordered to participate in the program, see

McKune, 122 S. Ct. at 2023, whereas in New Hampshire, the program is voluntary,[1] see Ainsworth, 244 F.3d at 211. More importantly, the programs differ with respect to the consequences for nonparticipation. In Kansas, nonparticipation results in the automatic curtailment of several privileges (including visitation rights, earnings, work opportunities, ability to send money to family, canteen expenditures, and access to a personal television), as well as an automatic transfer to less desirable housing. See McKune, 122 S. Ct. at 2023. In New Hampshire, nonparticipation can similarly result in a transfer to less desirable housing. More significantly, however, nonparticipation in the SOP almost always results in an inmate being denied parole. See Ainsworth, 244 F.3d at 212 ("At the preliminary injunction hearing, an official from the New Hampshire Adult Parole Board testified that to date 97 to 98 percent of the sex offenders who received parole had completed the SOP.").

The plurality opinion in McKune concluded that Kansas's SATP and the consequences for nonparticipation in it did not combine to create a compulsion that impermissibly encumbers the constitutional right not to incriminate oneself. In coming to this

---

[1] As we noted before, the Ainsworth appellants' brief asserted that "some of the plaintiffs apply for the SOP 'because their sentence specifically requires completion' . . . . However, the plaintiffs in no way develop this argument in their brief, precluding our consideration of the implications of any such sentencing requirements." Ainsworth, 244 F.3d at 216 n.9.

conclusion, the plurality relied on Sandin v. Conner, 515 U.S. 472 (1995), a due process challenge to prison conditions. While acknowledging that a due process claim differs from a Fifth Amendment claim, the plurality looked to Sandin in evaluating the latter. McKune, 122 S. Ct. at 2026 (plurality opinion). The Court in Sandin held that adverse prison conditions cannot give rise to a due process violation unless they constitute "atypical and significant hardship[s] on [inmates] in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Relying on this "useful instruction," the plurality concluded that the penalties imposed on the McKune plaintiff were significantly less than the potential penalties inmates faced in selected other cases in which the Supreme Court had determined that there was no Fifth Amendment violation. McKune, 122 S. Ct. at 2027-29 (plurality opinion). Therefore, according to the plurality, the SATP was not constitutionally impermissible.

In concurring in the judgment on much narrower grounds, Justice O'Connor rejected the idea that Sandin's due process analysis should be imported into a Fifth Amendment compulsion analysis. Indeed, she indicated that she "agree[d] with Justice STEVENS [in dissent] that the Fifth Amendment compulsion standard is broader than [the Sandin test]." McKune, 122 S. Ct. at 2032 (O'Connor, J., concurring in the judgment). On the facts of McKune, however, Justice O'Connor did not believe that "the

-5-

penalties assessed against respondent in response to his failure to incriminate himself [were] compulsive on _any_ reasonable test." _Id._ at 2035 (emphasis added). Curtailment of certain privileges and a transfer to less hospitable housing were simply not consequences "serious enough to compel [plaintiff] to be a witness against himself," _id._ at 2033-34, regardless of the theory used to evaluate the claim. Thus, without subscribing to the plurality's reasoning, Justice O'Connor concurred in the plurality's judgment. _Id._ at 2035.

## II.

When no single rationale explains the result of a divided Supreme Court, we interpret the holding to be the "position taken by those Members who concurred in the judgments on the narrowest grounds." _Marks_ v. _United States_, 430 U.S. 188, 193 (1977) (quoting _Gregg_ v. _Georgia_, 428 U.S. 153, 169 (1976)). Hence the Tenth Circuit held on remand in _McKune_ that the inmates' claims "[did] not rise to the level of compulsion contemplated by Justice O'Connor's concurring opinion" and dismissed them on that ground. _Lile_ v. _McKune_, 299 F.3d 1229, 1230 (10th Cir. 2002). _See_ _also_ _Searcy_ v. _Simmons_, 299 F.3d 1220, 1225 (10th Cir. 2002) ("[W]e view [Justice O'Connor's] concurrence as the holding of the Court in _McKune_."); _Reed_ v. _McKune_, 298 F.3d 946, 952 (10th Cir. 2002) ("Justice O'Connor's narrower position in her concurrence

-6-

represents the holding of the plurality decision."). We agree with this approach. Justice O'Connor's concurrence is "arguably more narrow than the plurality's and therefore constitutes the holding of the Court." Lurie v. Wittner, 228 F.3d 113, 130 (2d Cir. 2000); see also Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 580 (1st Cir. 1999) ("[I]nferior courts should give effect to the narrowest ground upon which a majority of the Justices supporting the judgment would agree.").

The difficulty presented by this interpretive precept is that Justice O'Connor does not purport to lay out any abstract analysis or unifying theory that would prefigure her views regarding the constitutionality of New Hampshire's program.[2] Taken together, the O'Connor and plurality opinions do not clearly foreshadow how the court would decide our case. For example, the plurality opinion notes in passing that nonparticipation in the Kansas program "[does] not extend [the] term of incarceration," nor does it "affect [] eligibility for good-time credits or parole." McKune, 122 S. Ct. at 2027 (plurality opinion). Later in the opinion, however, the plurality notes that in Minnesota v. Murphy, 465 U.S. 420 (1984), the Court found no compulsion to speak when "the defendant feared the possibility of additional jail time as a

_____

[2] Since both the plurality and Justice O'Connor reject the argument that a transfer to less desirable housing is constitutionally impermissible, appellants have withdrawn their "punitive housing transfer" claim. See Appellants' Suppl. Br. at 5.

-7-

result of his decision to remain silent."  McKune, 122 S. Ct. at 2029 (plurality opinion).  Thus, while the plurality apparently felt it noteworthy that a loss of parole was not at stake in Kansas, whereas it is in this case, it is far from clear that the plurality would regard such a consequence as constitutionally impermissible.  Under these circumstances, in considering our earlier opinion in light of McKune as the remand requires, we have no clear guideposts.  Instead, we must resort to our own sound judgment, so long as it does not conflict with existing precedent.

### III.

Our prior decision in this case examined a long line of Supreme Court precedents in which compulsion under the Fifth Amendment was at issue.  We recognized that historically the Supreme Court had described compulsion in relatively broad terms.  However, we also noted that in more recent decisions the Court had held that the analysis is more circumscribed in the prison context.  Citing the "watershed case" of Turner v. Safley, 482 U.S. 78 (1987), we reaffirmed our prior observation that when "burdens are laid upon the exercise of constitutional rights by prisons, the Supreme Court's current approach is to give very substantial latitude to the state's judgment."  Ainsworth, 244 F.3d at 213 (quoting Beauchamp v. Murphy, 37 F.3d 700, 704 (1st Cir. 1994), cert. denied, 514 U.S. 1019 (1995)).  Only "unreasonable" burdens

are proscribed. In determining whether a burden is unreasonable, we will look to:

> whether the state's policy serves a valid governmental interest; the extent to which the prisoner is foreclosed or burdened in exercising his rights; and the presence or absence of reasonable alternatives for the government to achieve the same ends by other means without significant cost or impairment of the governmental interest at stake.

Id. at 214 (quoting Beauchamp, 37 F.3d at 705 (citing Turner, 482 U.S. at 89-91) (internal quotations omitted)).

Without recapitulating our prior decision in its entirety, suffice it to say that we determined that the burden placed on appellants is not an unreasonable one. We began by citing criminological studies and social science research, noting that the admission of crimes is "widely believed to be a necessary prerequisite for successful treatment" of sex offenders. We determined that "New Hampshire unmistakably has a valid government interest in establishing the SOP, and in requiring sex offenders to admit past conduct to participate in it." Id. at 215.

Next, we examined the extent of the burden. We began by noting that "inmates do not have a 'liberty right' to parole" under either federal or New Hampshire law. Id. at 216. We recognized that there was some burden placed on appellants' exercise of their Fifth Amendment rights, but that the extent of that burden was mitigated by three factors. First, appellants were not suffering a new or additional penalty by being denied parole. Since parole

-9-

involves relief from a penalty that has already been imposed — the full period of incarceration to which appellants were sentenced — parole can be considered a "benefit that the state may condition on completion of the program." Id. at 216. Given the "crucial distinction between being deprived of a liberty one has . . . and being denied a conditional liberty that one desires," Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 9 (1979), we concluded that this aspect of the burden mitigated its extent. Second, we noted that the extent of the burden was also mitigated by the voluntary nature of the program (notwithstanding the consequences of nonparticipation). Third, we observed that the denial of parole was not entirely automatic. While the vast majority of parolees had completed the SOP prior to release, a few inmates are paroled each year despite having not completed the SOP.

Finally, we considered "whether reasonable alternatives exist for the government to achieve its ends without significant cost or impairment to the governmental interest at stake." Ainsworth, 244 F.3d at 220. We recognized that the state could offer a grant of limited-use immunity to appellants before requiring them to disclose past misconduct. Any impermissible Fifth Amendment compulsion would thus be obviated. However, we concluded that "the decision about whether to grant immunity to sex offenders is a policy choice that lies in the state's hands." Id. at 221.

Our ultimate conclusion under the <u>Turner</u> framework, in light of the three factors outlined above, was as follows:

> Weighing these factors, and drawing upon the meaning of compulsion under the Fifth Amendment developed by the precedents we have cited, we conclude that the reduced likelihood of parole for refusing to participate in the SOP does not constitute a penalty sufficient to compel incriminating speech in violation of the Fifth Amendment.

<u>Ainsworth</u>, 244 F.3d at 221.  Having duly considered our decision in light of <u>McKune</u>, we now adhere to our earlier judgment.  The judgment of the district court is **<u>affirmed</u>**.

**<u>          SO ORDERED</u>**.