# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2069

_____

| | | |
|---|---|---|
| Orris Bowles, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| Osmose Utilities Services, Inc., | * | District of Arkansas. |
| | * | |
| Appellant. | * | |

_____

Submitted: January 13, 2006
Filed: March 29, 2006 (Corrected: 04/11/06)

_____

Before WOLLMAN, LAY, and ARNOLD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Osmose Utilities Services, Inc., appeals the judgment of the district court[1] in favor of Orris Bowles on his race discrimination claim. Osmose requests judgment as a matter of law or, in the alternative, that the punitive damages award be set aside or reduced. We affirm the district court's judgment in all respects.

_____

[1]The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

## I.

Orris Bowles was hired in November, 2003, by Steve Fisher, an Osmose foreman, to work on Mr. Fisher's utility pole treatment crew. On January 6, 2004, Mr. Bowles filed a lawsuit against Osmose under 42 U.S.C. § 1981 claiming that it had subjected him to a racially hostile work environment. After a bench trial, the district court found for Mr. Bowles and awarded him $20,000 in compensatory damages and $80,000 in punitive damages.

## A.

Osmose contends that the district court clearly erred in making findings of fact that supported Mr. Bowles's account of the racial harassment that he suffered and the way that it affected him. We review the district court's factual findings for clear error. *Tadlock v. Powell*, 291 F.3d 541, 546 (8th Cir. 2002).

The district court found that soon after Mr. Bowles started working on the crew, Mr. Fisher peppered him and the other black crew members with racial insults. The court also made findings consistent with Mr. Bowles's testimony about specific instances of conduct by Mr. Fisher and the injurious effect of those insults on Mr. Bowles.

"[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985). Although there were some inconsistencies in the trial testimony of Mr. Bowles and his co-workers regarding when Mr. Fisher's racist conduct began, how certain members of the crew responded, and how some events took place, the district court found this slightly confused set of narratives credible. The stories that Mr. Bowles and his witnesses told were all relatively coherent and differences between the accounts did not affect the matters at

the core of this action, namely whether Mr. Fisher repeatedly used racial slurs when addressing the crew members and whether this behavior injured Mr. Bowles. It was not clearly erroneous for the district court to credit the testimony of the crew.

B.

Osmose additionally asserts that, even if the district court did not clearly err in believing Mr. Bowles's testimony about racial discrimination, the court should have entered judgment for the defendant on the basis of what is called the *Ellerth* defense. Under *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998), if no tangible employment action was taken against the plaintiff, the employer took reasonable care to prevent and correct the objectionable behavior in a timely fashion, and the plaintiff unreasonably failed to mitigate the harm, then the employer is entitled to judgment in its favor.

Osmose contends that Mr. Bowles did not inform Mr. Fisher's supervisor, Trevor Holmes, of Mr. Fisher's racially offensive conduct until January 5, 2004, and that it was thus entitled to the *Ellerth* defense because Mr. Bowles's delay was unreasonable and gave Osmose only one day's notice to correct the problem before suit was filed. But Mr. Holmes's testimony that no complaints of racial discrimination were made until January 5 was the only evidence that supported the *Ellerth* defense, and the district court disbelieved it. The court instead credited the testimony of Mr. Bowles and his fellow crew members that numerous complaints about Mr. Fisher's conduct had been made to Mr. Holmes, some as far back as November 2003. The district court found that Mr. Holmes had been informed of the racial slurs soon after they began but that neither he nor his superior investigated the crew members' accusations before January 5. On that date Mr. Holmes's supervisor, Eric Hampton, asked Mr. Fisher if the allegations were true and accepted Mr. Fisher's denial because (according to Mr. Hampton) he "tended to believe" that Mr. Fisher would not do the things that he was accused of.

-3-

As we have said, the decision to credit the testimony of certain witnesses and not others is virtually never clear error. *See Anderson*, 470 U.S. at 575. And because the district court did not clearly err in believing the testimony that Osmose was given timely notice of the racial harassment but did nothing to correct it, we uphold the court's rejection of the *Ellerth* defense, which requires an employer to take reasonable care to correct wrongful conduct in a timely fashion, *see Ellerth*, 524 U.S. at 765.

II.

Osmose also appeals the district court's award of $80,000 in punitive damages. We dispose first of Osmose's contention that the amount was so excessive as to violate due process.

The Supreme Court has held that when punitive damages are single-digit multiples of compensatory damages they are "more likely to comport with due process" and that few awards that exceed such a single-digit ratio, "to a significant degree, will satisfy due process." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). In addition, where, as here, the amount of compensatory damages is not particularly large, a higher ratio between the punitive and compensatory damages will generally comport with due process. *See id.* Here the punitive-damages award is four times the compensatory-damages award, well within the single-digit range. We have approved punitive damages awards in this range where the conduct was especially reprehensible, *see, e.g., Kim v. Nash Finch Co.*, 123 F.3d 1046, 1067 (8th Cir. 1997), and have observed that the gravity of the defendant's offense is the dominant consideration when determining the constitutionality of such an award, *see Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 839 (8th Cir. 2005).

The district court found on an ample record that as a result of Mr. Fisher's behavior Mr. Bowles suffered considerable mental anguish. On one occasion, he ground his teeth so hard that he broke one; and the harassment that he suffered caused

-4-

him to drink more heavily and led to domestic upheavals. Mr. Bowles's injuries flowed from Osmose's indifference to the racially discriminatory behavior of its foreman. The punitive damages award is not excessive, given the egregiousness of Osmose's conduct and the injuries that it caused.

Osmose also challenges the award of punitive damages because Mr. Bowles did not ask for punitive damages in either his original or amended complaint. Osmose, however, was unarguably on notice of Mr. Bowles's intention to seek punitive damages three weeks before trial, when Mr. Bowles explicitly stated in his pre-trial disclosure material that he would do so. And Osmose had arguably been notified of Mr. Bowles's intention over three months before trial, when, during the discovery process, Mr. Bowles requested information on Osmose's net worth, a request that made sense only if Mr. Bowles intended to seek punitive damages.

The Federal Rules of Civil Procedure establish a simplified standard for pleading in civil actions. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513-14 (2002). Chief among the values that the Rules promote is notice: "The essential function of notice pleading 'is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.' " *Northern States Power Co. v. Federal Transit Admin.*, 358 F.3d 1050, 1056-57 (8th Cir. 2004) (quoting *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 714 (8th Cir. 1979)). Here, Mr. Bowles filed a document three weeks before trial that explicitly notified Osmose of his intention to seek punitive damages. *Cf. Scutieri v. Paige*, 808 F.2d 785, 790-92 (11th Cir. 1987). This provided Osmose with adequate time to conform its defense to the plaintiff's announced objectives, and serves to distinguish this case from *Anheuser-Busch, Inc. v. John Labatt, Ltd.*, 89 F.3d 1339, 1350 (8th Cir. 1996). Though the complaint might have been more artfully drawn, Osmose knew before trial what sort of claims Mr. Bowles's lawsuit involved.

While the complaint did not ask for punitive damages, Fed. R. Civ. P. Rule 54(c) provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Osmose maintains that awarding punitive damages in this instance runs contrary to Fed. R. Civ. P. 9(g), which states that "[w]hen items of special damage are claimed, they shall be specifically stated." But even if punitive damages are "special" within the meaning of this rule, the object of the rule is to guard against unfair surprise, and, for the reasons that we have already indicated, that object is fully satisfied here. Osmose asserts that it would have called different witnesses had it been apprised more fully of Mr. Bowles's claims. But, as the district court noted, all the corporate witnesses whom Osmose asserts that it would have called actually testified at trial. Osmose therefore suffered no prejudice in this respect.

### III.

For the aforementioned reasons, we affirm the judgment of the district court.

_____