# 1United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3003

_____

Spencer Ondrisek; Seth Calagna

*Plaintiffs - Appellees*

v.

Bernie Lazar Hoffman, also known as Tony Alamo

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Texarkana

_____

Submitted: June 14, 2012
Filed: October 1, 2012

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Bernie Lazar Hoffman, better known as Tony Alamo, appeals a jury verdict finding him liable for battery, outrage, and conspiracy. He also appeals the district court's denial of his motion for remittitur. Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part and reverses in part.[1]

_____

[1]The opinion of August 28, 2012, in this case is hereby vacated and this opinion substituted for it.

# I.

Alamo was the leader of a religious group, Tony Alamo Christian Ministries (TACM). He controlled members' finances and prohibited them from traveling or speaking to outsiders unless it was to witness. Children were not allowed to attend public schools, watch television, or listen to the radio. They were told not to trust anyone, especially government officials or police. Alamo regularly recorded messages telling followers that if they left the group, they would become homosexuals and go to hell. Followers were afraid to question Alamo; those who did were often beaten.

Spencer Ondrisek and Seth Calagna were raised in TACM. They were forced to work without pay starting at the age of 8. Alamo began threatening to beat Ondrisek when he was 11. Alamo told him that if he disobeyed, he would be enlisted in the military and "shot and killed." When he was 12, Alamo had an "enforcer" severely beat him because he made a small tunnel while hauling dirt for the church. As Ondrisek received discipline of 15 to 20 blows to his face, Alamo made his father watch. Ondrisek then received 20 to 30 strikes from a paddle that was three feet long, an inch-and-a-half thick, and three or four inches wide. He was unable to sit for several days and not allowed to attend services because the swelling on his face was too visible. Two years later Alamo had Ondrisek beaten again for horseplay. He sustained 15 to 20 hits to his mouth, beginning to bleed after the second blow. He also received 30 to 40 paddles (maybe more), causing severe bruising that did not fully heal for several weeks. He has permanent scarring from the beating. At 15, Ondrisek's schooling stopped, and he began working on the church's property 70 hours a week. He was forced to attend services and listen to Alamo's recordings daily. As punishment for falling asleep as a night watchman, Alamo required him to fast two days, giving him only water. At 16 or 17, Ondrisek was beaten for a third time after being falsely accused of bullying. He was slapped 20 or more times in the

-2-

face, and paddled 40 times. Ondrisek blacked out, but no one took him to a hospital. His hand was severely injured and still causes him pain.

Calagna's youth at TACM was similar to Ondrisek's. When he was 14, Calagna's parents woke him at 4 a.m. to have him beaten. He was hit so hard he vomited. His face was unrecognizable afterwards; his injuries took weeks to heal. Less than a month later, he witnessed his father get beaten, causing him emotional distress. He was beaten again at 17 for talking about "Harry Potter." He was struck until the paddle broke and then hit again with a larger board. In addition to physical abuse, both boys experienced verbal abuse. They both contemplated suicide, "unable to imagine that death would be worse." At 18, Ondrisek and Calagna escaped TACM separately. They still have trouble sleeping, experiencing nightmares and flashbacks. Alamo is currently serving a 175-year sentence for 10 counts of transporting minors across state lines for illicit sex. *United States v. Hoffman*, 626 F.3d 993 (8th Cir. 2010), *cert. denied*, 131 S. Ct. 3004 (2011).

Ondrisek and Calagna sued Alamo for battery, outrage, and conspiracy. At trial, Alamo requested a jury instruction that reasonable corporal punishment was a defense to battery, but the court refused it. The jury awarded Ondrisek and Calagna each $3 million in actual damages and $30 million in punitive damages. The district court denied Alamo's motion to remit the actual and punitive damage awards. Alamo asserts on appeal that (1) he is not liable because he was exercising his First Amendment rights; (2) the district court erred in refusing his jury instruction on battery; (3) the evidence was insufficient to support a claim for outrage; and (4) the compensatory and punitive damages were excessive.

II.

Alamo believes he should be free from liability because he is able to exercise his religion freely. The First Amendment allows freedom of religious belief, but not injuries to the "equal rights of others." *See Sharp v. Sigler*, 408 F.2d 966, 970 (8th

Cir. 1969) ("While freedom to believe is absolute, the exercise of religion is not. The exercise is not, for example, to be 'injurious to the equal rights of others.'"), *quoting Davis v. Beason*, 133 U.S. 333, 342 (1890). If a religious practice physically injures others, the state has the power to prevent or punish the acts. *Feiner v. New York*, 340 U.S. 315, 320 (1951). Alamo's contention that the trial should not have proceeded because it involved only ecclesiastical questions is without merit.

III.

"This court reviews the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the [nonmovant], with all reasonable inferences and credibility determinations made in support of the jury's verdict." *United States v. Kelly*, 436 F.3d 992, 996 (8th Cir. 2006). To preserve an insufficiency argument, a party must move for a judgment as a matter of law before submission to the jury, or after the verdict and entry of judgment in accordance with Rule 50 of the Federal Rules of Civil Procedure. *Linden v. CNH Am., LLC*, 673 F.3d 829, 832 (8th Cir. 2012), *citing Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 396 (2006). "'[I]n the absence of such a motion' an 'appellate court [is] without power to direct the District Court to enter judgment contrary to the one it had permitted to stand.'" *Unitherm*, 546 U.S. at 400-01 (second alteration in *Unitherm*), *quoting Cone v. West Va. Pulp & Paper Co.*, 330 U.S. 212, 218 (1947). *See generally Johnson v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 48 (1952) (holding that in the absence of a motion for judgment notwithstanding verdict, an appellate court cannot enter such judgment); *Globe Liquor Co. v. San Roman*, 332 U.S. 571 (1948) (holding that an appellate court cannot order a final judgment for the loser of a jury verdict who failed to move under Rule 50(b)). The same applies to the appellate court's ability to order a new trial. *Unitherm*, 546 U.S. at 402. "No procedural principle is more familiar to [the] Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus v. United States*, 321 U.S. 414, 444 (1944).

Alamo complains that his actions do not rise to the level of outrageous conduct required by Arkansas Law. Alamo never moved for a judgment as a matter of law before the case's submission to the jury or after the jury's verdict. This court has no power to review his claim.

## IV.

This court reviews the district court's denial of a requested jury instruction for abuse of discretion. *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 594 (8th Cir. 2001). Appellate review is limited to whether the instructions, viewed on the whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury. *Id.* In a diversity case, state law applies to the substance of the instructions. *Kudabeck v. Kroger Co.*, 338 F.3d 856, 863 (8th Cir. 2003). "An error in instructing the jury in a civil case does not require reversal if it is more probably than not harmless." *Ross v. Jones*, 888 F.2d 548, 550 (8th Cir. 1989). This court should reverse only if the district court made an error that affects the substantial rights of the parties. *McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 744-45 (8th Cir. 2010), *quoting* *Brown v. Sandals Resorts Int'l*, 284 F.3d 949, 953 (8th Cir. 2002) .

Alamo believes that beating Ondrisek and Calagna was justified as punishment under Arkansas law. *See* **Ark. Code. Ann. § 5-2-605;** *Brown v. Brown*, 68 S.W.3d 316, 322 (Ark. Ct. App. 2002), *citing* **Ark. Code. Ann. § 12-12-503(2)(C)(i)** (Supp. 2001) (repealed 2009); *Arkansas Dep't of Human Servs. v. Holman*, 240 S.W.3d 618, 621 (Ark. Ct. App. 2006) (evidence of bruising alone is not dispositive to prove abuse). He proffered the following jury instruction:

> It is a complete defense to battery in that reasonable corporal punishment was imposed on plaintiffs by a school administrator, teacher, parent, or person entrusted or otherwise responsible for a child's care and discipline because the plaintiffs were engaging in any conduct

that was disruptive, harassing of others, constituted bullying, violence, or other unacceptable conduct.

Corporal punishment shall be reasonable, shall not be excessive, and shall not be administered with malice. The fact there was bruising does not make corporal punishment unreasonable.

If you find that corporal punishment was reasonably applied and was not excessive, then your verdict should be for Tony Alamo and against Spencer Ondrisek and Seth Calagna.

Alamo contends that the district court erred in refusing this instruction. Any error was harmless. Because Alamo's instruction applied only to battery, it would not have affected the separate liability verdicts on outrage and conspiracy. By the liability verdict on outrage, the jury found that Alamo willfully engaged in extreme and outrageous conduct, causing Ondrisek and Calagna emotional distress and bodily harm. *See McQuay v. Guntharp*, 963 S.W.2d 583, 587 (Ark. 1998) (finding a claim for outrage "separate and apart" from a claim for battery). This finding on outrage justifies a key element of the conspiracy verdict (as the conspiracy instruction here required finding either outrage or battery). *See Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004) (civil conspiracy is not a separate tort under Arkansas law and must be based on an underlying tort). When one of alternative theories of liability fully sustains the damages awarded, the award should stand despite the erroneous submission of another theory, where the damages are the same under a properly submitted theory. *See Robertson Oil Co., Inc. v. Phillips Petroleum Co.*, 871 F.2d 1368, 1376 (8th Cir. 1989) (affirming the award for actual damages where the conduct differed according to the theories of liability, but where the same injury sustained all theories of actual damages); *Potts v. Benjamin*, 882 F.2d 1320, 1325 (8th Cir. 1989) ("[E]ven if it was error to submit the case on a strict liability theory . . . that error was harmless since the jury separately found for plaintiffs on their alternative, unobjectionable theory of recovery."). *See also Bingham v. Zolt*, 66 F.3d 553 (2d Cir. 1995) ("Plaintiff is entitled to recover its full measure of compensatory damages, despite the [post-judgment] dismissal of certain common law claims, because each claim presented an alternative theory of liability based upon the same

set of facts, the same series of acts, and the same injuries caused by the same actors.").

In this case, the jury was instructed to assess damages for physical and mental harm if it found Alamo liable under any of the three theories. The verdict forms did not require or allow three separate damages awards. *See **Washburn v. Kansas City Life Ins. Co.***, 831 F.2d 1404, 1411 (8th Cir. 1987) (a plaintiff can recover only once for alternative theories of liability). The separate liability verdicts for outrage and conspiracy were sufficient to sustain the damages awarded.

Alamo claims a conflict with *Friedman & Friedman, Ltd. v. Tim McCandless, Inc.,* 606 F.3d 494 (8th Cir. 2010). This court there ordered a retrial where the jury returned a general damages verdict after the district court refused to instruct on a defense to one of two theories of liability. ***Id.*** at 502, *citing **Dudley v. Dittmer,*** 795 F.2d 669, 673 (8th Cir. 1986). In *Friedman*, the jury instructions allowed different damages under each theory of liability. ***Id.*** at 501-02. Here, the jury instructions allowed the same damages under either the battery, outrage, *or* conspiracy theories. The rule in *Friedman* does not apply in this case. *See **Robertson***, 871 F.2d at 1376 ("In *Dittmer*, each theory submitted to the jury caused the plaintiff separate and distinct injuries. . . . Here, however, the same injury sustained all theories and we are satisfied that *Dittmer* does not bar the actual damage award."). Any instructional error did not affect the parties' substantial rights or the trial's probable outcome.

V.

A.

This court reviews the district court's denial of a motion for remittitur for "manifest abuse of discretion" or a verdict that is "so grossly excessive as to shock

the conscience." ***Foster v. Time Warner Entm't Co.***, 250 F.3d 1189, 1194 (8th Cir. 2001). This court reviews compensatory damages with great deference and reduces a verdict only in rare situations where there is "plain injustice or a monstrous or shocking result." ***Vanskike v. Union Pac. R.R. Co.***, 725 F.2d 1146, 1149 (8th Cir. 1984) ("[E]xcessiveness of a verdict is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of witnesses . . . .") (internal quotations omitted), *quoting* ***Solomon Dehydrating Co. v. Guyton***, 294 F.2d 439, 447-48 (8th Cir. 1961).

Alamo contends that $3 million in compensatory damages is excessive for each plaintiff. When awarding compensatory damages, the jury considered Ondrisek's and Calagna's past and future pain, suffering, and mental anguish. The jury properly weighed the evidence, finding that Alamo continually verbally and physically abused Ondrisek and Calagna. The abuse included: repeated ritualistic and savage beatings; forced unpaid labor; denial of food; denial of formal education; complete isolation from the outside world; and threats of damnation if they tried to escape. Alamo compares his case to other Arkansas cases with lesser verdicts. ***Smith v. Hansen***, 914 S.W.2d 285 (Ark. 1996) (each plaintiff recovering $250,000 in compensatory and $500,000 in punitive damages from each defendant in an assault, battery, and outrage case); ***Spears v. State Farm Fire & Cas. Ins.***, 725 S.W.2d 835 (Ark. 1987) (total of $570,000 compensatory and $2 million punitive damages in a negligence and willful and wanton conduct case). However, the cases to which he draws comparison are not factually similar to his case. *See* ***Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.***, 532 U.S. 424, 440 (2001) (finding that an appellate court is better suited to compare awards in different cases). Alamo also compares Ondrisek and Calagna's case against him to their case against the TACM "enforcer," arising from the same facts. ***Ondrisek v. Kolbek***, No. 4:09CV4100-HFB (W.D. Ark. Oct. 22, 2009) (each receiving $500,000 in compensatory and $1 million in punitive). However, Alamo

orchestrated and supervised the beatings in both cases, justifying the compensatory damages awarded against him.

B.

Alamo contests the punitive damages award of $30 million to each plaintiff. First, he argues that the award was not proper under Arkansas law because it was not justified by the policy objectives underlying punitive damage awards. Punitive damages are designed to punish and deter harmful conduct. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492 (2008); *Advocat, Inc. v. Sauer*, 111 S.W.3d 346, 359 (Ark. 2003). Alamo contends that the award in this case cannot be based on deterrence because he is incarcerated and unable to continue the conduct. He characterizes the punitive damages as punishment for his "unorthodox religious beliefs." As noted, Alamo's tortious actions – not his religious beliefs – are at issue in this case and justify a punitive damage award. And "[u]nder Arkansas law, a punitive damages award serves not only to 'deter similar conduct on the part of the particular tortfeasor,' but also 'others who might be inclined to engage in such conduct.'" *Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 602 (8th Cir. 2005) (internal quotation marks omitted), *quoting Robertson Oil Co. v. Phillips Petrol. Co.*, 14 F.3d 373, 378 (8th Cir.1993) (en banc); *see Ray Dodge, Inc. v. Moore*, 479 S.W.2d 518, 523 (Ark. 1972). An award of punitive damages in this case is justified both as punishment for Alamo's actions and to deter others from comparable conduct.

Second, he contends that the amount of the award violates federal due process and Arkansas law. Juries have considerable flexibility in determining the level of punitive damages. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996). The Due Process Clause of the Fourteenth Amendment prohibits "grossly excessive" civil punishment. *Cooper*, 532 U.S. at 433-34, *citing Gore*, 517 U.S. at 562. This court reviews the constitutionality of punitive damages de novo. *Ross v. Kansas City*

*Power & Light Co.*, 293 F.3d 1041, 1048 (8th Cir. 2002). Similar to compensatory damages, punitive damages are grossly excessive if they "shock the conscience of this court or . . . demonstrate passion or prejudice on the part of the trier of fact." *Stogsdill v. Healthmark Partners, L.L.C.*, 377 F.3d 827, 832 (8th Cir. 2004); *Routh Wrecker Serv., Inc. v. Washington*, 980 S.W.2d 240, 244 (Ark. 1998). "Because the Arkansas courts employ the United States Supreme Court's due process analysis, we conflate both state and federal review." *Boerner*, 394 F.3d at 602. To determine whether a punitive award shocks the conscience or demonstrates prejudice, the Court reviews:

> (1) the degree of reprehensibility of the defendant's conduct;
>
> (2) the disparity between actual or potential harm suffered and the punitive damages award (often stated as a ratio between the amount of the compensatory damages award and the punitive damages award); and
>
> (3) the difference between the punitive damages award and the civil penalties authorized in comparable cases.

*Id.*, *citing Gore*, 517 U.S. at 574-75. Taken together, these guideposts are meant to ensure proper notice of the penalty associated with his conduct. *Gore*, 517 U.S. at 574.

This court evaluates whether the reprehensible nature of Alamo's conduct warrants further damages to achieve punishment or deterrence of the conduct in the future. *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). Reprehensibility is the most important guidepost. *Gore*, 517 U.S. at 575. In determining reprehensibility, the Supreme Court instructs courts to consider whether:

> [1] the harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; [3] the target of the conduct had financial

vulnerability; [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Campbell*, 538 U.S. at 419. These factors demonstrate the extreme reprehensibility of this case.[2] The harm was physical. Alamo's tortious conduct evinced a reckless disregard for the health and safety of Ondrisek and Calagna, involving repeated acts against both. This is not the first time Alamo has been found liable of beating children. In a previous case involving the same type of conduct, a district court called Alamo's offenses "atrocious," "monstrous," and "cold blooded." *Miller v. Tony & Susan Alamo Found.*, 748 F. Supp. 695, 697-98 (W.D. Ark. 1990) ("No feeling person could fail to be moved by the testimony in this case or to be revolted by the cold blooded and calculated manner in which the punishment . . . was carried out."). This court, like the court in *Miller*, "can conceive of no higher duty incumbent on it than the protection of children from outrageous batteries like the one that the evidence here so plainly reveals." *Id.* at 698. Even after he was found liable, Alamo continued beating children, indicating that the prior, lesser damages did not deter him. Alamo was in a position of trust as a religious leader, yet he continually abused that power to subject children to substantial physical and emotional abuse. Following Alamo's repeated beatings, both Ondrisek and Calagna contemplated suicide, "unable to imagine that death would be worse." Alamo's conduct was exceptionally reprehensible, justifying significant punitive damages.

Moving to the second guidepost, Alamo challenges the 10:1 ratio between the punitive and compensatory damages. The Supreme Court has "consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award." *Gore*,

---

[2]Because the harm in this case was non-economic, the third factor does not apply.

517 U.S. at 582. But, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Campbell*, 538 U.S. at 425. "A higher ratio may . . . be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *Gore*, 517 U.S. at 582. Conversely, "[wh]en compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Campbell*, 538 U.S. at 425. In this case, the $3 million compensatory damages awarded to each plaintiff are substantial. *Cf. id.* at 426 (finding a $1 million award substantial). "[I]n upholding a punitive damages award, [the Supreme Court] concluded that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id.* at 425, *citing* ***Pacific Mut. Life Ins. Co. v. Haslip***, 499 U.S. 1, 23-24 (1991).

In the years since *Gore*, this court has seldom reviewed the punitive damages with compensatory damages greater than $1 million. *See the Appendix to this opinion*. Only three times has this court reviewed an award of punitive damages exceeding $1 million with a ratio to compensatory damages greater than 1:1. First, in *Eden Electrical, Ltd. v. Amana Co.*, 370 F.3d 824 (8th Cir. 2004), the plaintiff company was tricked into buying $2.4 million worth of "junk" by the defendant's fraudulent promise to enter into a long-term exclusive distributorship agreement, which the defendant breached immediately and terminated within months. *Id.* at 828. "[The defendant]'s agents expressed the desire to 'f***' and 'kill' [the plaintiff] after taking its $2.4 million." *Id.* at 829. The jury awarded $2.1 million in compensatory damages and $17.875 million in punitives, which the district court reduced to $10 million – a 4.8:1 ratio – for fraud and breach of contract. *Id.* at 827. This court affirmed the $10 million award, relying on the *Gore* factors and finding the defendant's conduct "extraordinarily reprehensible." *Id.* at 829.

Second, in *Conseco Finance Servicing v. North American Mortgage Co.*, 381 F.3d 811 (8th Cir. 2004), a mortgage company sued after its former employees joined a competitor and took the confidential loan information of the plaintiff's customers with them. *Id.* at 815-16. The defendant mortgage company, pleased with the results of using the misappropriated information, replicated the process all over the country. *Id.* at 816. The jury awarded $3.5 million in compensatory damages and $18 million in punitives – a 5.1:1 ratio – for unfair competition and tortious interference with business relations. This court reduced the punitive award to $7 million – a 2:1 ratio – noting the "absence of extremely reprehensible conduct against the plaintiff or some special circumstance." *Id.* at 825, *quoting* **Williams v ConAgra Poultry Co.**, 378 F.3d 790, 799 (8th Cir. 2004).

Finally, in *Boerner*, the widower of a brand-loyal smoker who died of lung cancer sued the manufacturer of the brand's cigarettes that were substantially more addictive and carcinogenic than its competitors'. 394 F.3d at 598. The jury awarded $4.025 million in compensatory damages and $15 million in punitives – a 3.7:1 ratio – for a design defect. *Id.* This court reduced the punitive damages to $4.025 million – a 1:1 ratio. *Id.* at 603. The *Boerner* court distinguished the higher ratio affirmed in *Eden Electrical* because the defendant in that case acted intentionally. *Id.* While the cigarette manufacturer may have "exhibited a callous disregard for the adverse health consequences of smoking," "there [was] no evidence that anyone at [the manufacturer] intended to victimize its customers." *Id.*

Addressing the third *Gore* guidepost, this court must also compare damages awarded in similar civil cases. While the 10:1 ratio in this case is the same as in Alamo's (unappealed) previous case, the compensatory damages are significantly larger ($3 million compared to $50,000). *See* **Miller**, 748 F. Supp. at 699. In the related case arising from these facts, the court imposed a 2:1 ratio, *see* **Kolbek**, No. 4:09CV4100-HFB ($500,000 in compensatory and $1 million in punitive), but Kolbek was only carrying out Alamo's orders.

Despite the exceptionally reprehensible nature of Alamo's conduct, it would be unconstitutional to let the punitive damages – and their 10:1 ratio to compensatory damages – stand. *Cf. Campbell*, 538 U.S. at 419-20 ("While we do not suggest there was error in awarding punitive damages based upon State Farm's conduct toward the Campbells, a more modest punishment for this reprehensible conduct could have satisfied the State's legitimate objectives, and the Utah courts should have gone no further."). Although this court's previous cases are instructive, "[t]he precise award in any case . . . must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." *Id.* at 425. Alamo's intentional conduct exhibits a level of reprehensibility beyond that seen in either *Conseco Finance Servicing* or *Boerner* and therefore a reduction to 2:1 or 1:1 is not required. The 4.8:1 ratio affirmed in *Eden Electrical* currently marks this court's constitutional boundary when multi-million dollar compensatory damages award are involved. This panel does not suggest that Alamo's actions are any less reprehensible than the defendant's conduct in that case, but – given the larger compensatory damage award here – the punitive damages should not exceed a 4:1 ratio to maintain the notions of fundamental fairness and due process.[3] *See id.* at 425 (noting that a 4:1 ratio may approach the constitutional limit). Punitive damages of $12 million for each plaintiff are sufficient to achieve proper punishment and to deter similar reprehensible violence against children in the future.

* * * * * * *

---

[3]Alamo's brief argues for a 2:1 ratio, but during oral argument his counsel stated that "a reasonable verdict should be probably 3 to 5 – somewhere in that vicinity."

The judgment of the district court is affirmed in all regards, except that the punitive damages award is reversed and remanded to the district court for entry of a verdict imposing $12 million in punitive damages for each plaintiff.

_____

# Appendix

Eighth Circuit cases on the constitutionality of punitive damages after *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996).[4]

| 8th Circuit Case | District Court or Jury | | | Court of Appeals | |
|---|---|---|---|---|---|
| | Pun. | Comp. | Ratio | Pun. | Ratio |
| *White v. McKinley*, 605 F.3d 525 (8th Cir. 2010). | $1,000,000 | $14,000,000 | 1:14 | *Affirmed* | |
| *Quigley v. Winter*, 598 F.3d 938 (8th Cir. 2010). | $250,000 | $13,685 | 18.3:1 | $54,750 | 4:1 |
| *Moore v. American Family Mut. Ins. Co.*, 576 F.3d 781 (8th Cir. 2009). | $1,150,000 | $1,150,000 | 1:1 | *Affirmed* | |
| *Wallace v. DTG Operations, Inc*, 563 F.3d 357 (8th Cir. 2009). | $500,000 | $30,000 | 16:1 | $120,000 | 4:1 |
| *JCB, Inc. v. Union Planters Bank,* 539 F.3d 862 (8th Cir. 2008). | $1,150,000 | $1,446,500 | 1:1.3 | *Affirmed* | |
| *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001 (8th Cir. 2008). | $1,044,445 | $125,000 | 8.4:1 | *Affirmed* | |
| *Bowles v. Osmose Utils. Servs., Inc.*, 443 F.3d 671 (8th Cir. 2006). | $80,000 | $20,000 | 4:1 | *Affirmed* | |
| *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820 (8th Cir. 2005). | $2,660,000 | $665,000 | 4:1 | *Affirmed* | |

---

[4]This appendix does not include cases involving punitive damages awards based on nominal compensatory damages. *See, e.g.*, **Asa-Brandt, Inc. v. ADM Investor Servs., Inc.**, 344 F.3d 738 ( 2003).

| 8th Circuit Case | Pun. | Comp. | Ratio | Pun. | Ratio |
|---|---|---|---|---|---|
| **Boerner v. Brown & Williamson Tobacco Co.**, 394 F.3d 594 (8th Cir. 2005). | $15,000,000 | $4,025,000 | 3.7:1 | $5,000,000 | 1.2:1 |
| **Conseco Fin. Servicing Corp. v. North Am. Mortg. Co.**, 381 F.3d 811 (8th Cir. 2004). | $18,000,000 | $3,500,000 | 5.1:1 | $7,000,000 | 2:1 |
| **Williams v. ConAgra Poultry Co.**, 378 F.3d 790 (8th Cir. 2004). | $6,063,750 | $600,000 | 10.1:1 | $600,000 | 1:1 |
| **Stogsdill v. Healthmark Partners, L.L.C.**, 377 F.3d 827 (8th Cir. 2004). | $5,000,000 | $500,000 | 10:1 | $2,000,000 | 4:1 |
| **MacGregor v. Mallinckrodt, Inc.**, 373 F.3d 923 (8th Cir. 2004). | $300,000 | $170,803 | 1.8:1 | *Affirmed* | |
| **Eden Elec., Ltd. v. Amana Co.**, 370 F.3d 824 (8th Cir. 2004). | $10,000,000 | $2,100,000 | 4.8:1 | *Affirmed* | |
| **Walsh v. National Computer Sys., Inc.**, 332 F.3d 1150 (8th Cir. 2003). | $300,000 | $112,000 | 2.7:1 | *Affirmed* | |
| **Life Plus Int'l v. Brown**, 317 F.3d 799 (8th Cir. 2003). | $180,000 | $11,000[5] | 16.4:1 | *Affirmed* | |
| **Salitros v. Chrysler Corp.**, 306 F.3d 562 (8th Cir. 2002). | $100,000 | $445,516 | 1:4.5 | *Affirmed* | |
| **Ross v. Kansas City Power & Light Co.**, 293 F.3d 1041 (8th Cir. 2002). | $120,000 | $6,000 | 20:1 | $60,000 | 10:1 |
| **Grabinski v. Blue Springs Ford Sales, Inc.**, 203 F.3d 1024 (8th Cir. 2000) (multiple defendants). | $210,000 | $7,835 | 26.8:1 | *Affirmed* | |
| **United States v. Big D Enters., Inc.**, 184 F.3d 924 (8th Cir. 1999) (multiple defendants). | $100,000 | $1,000 | 100:1 | *Affirmed* | |

[5]The jury award of compensatory damages was ambiguous. This court used $11,000 as representative of plaintiff's actual loss. 317 F.3d at 806.

| 8th Circuit Case | Pun. | Comp. | Ratio | Pun. | Ratio |
|---|---|---|---|---|---|
| ***Morse v. Southern Union Co.***, 174 F.3d 917 (8th Cir. 1999). | $400,000 | $70,000 | 5.7:1 | *Affirmed* | |
| ***Watkins v. Lundell***, 169 F.3d 540 (8th Cir. 1999). | $3,500,000 | $235,000 | 14.9:1 | $940,000[6] | 4:1 |
| ***Denesha v. Farmers Ins. Exch.***, 161 F.3d 491 (8th Cir. 1998). | $4,000,000 | $164,280.67 | 24.3:1 | $700,000 | 4.3:1 |
| ***Dean v. Olibas***, 129 F.3d 1001 (8th Cir. 1997). | $70,000 | $5,000 | 14:1 | *Affirmed* | |
| ***Kim v. Nash Finch Co.***, 123 F.3d 1046 (8th Cir. 1997). | $300,000 | $100,000 | 3:1 | *Affirmed* | |
| ***Parsons v. First Investors Corp.***, 122 F.3d 525 (8th Cir. 1997). | $300,000 | $26,949.51 | 11.1:1 | *Affirmed* | |
| ***Kimzey v. Wal-Mart Stores, Inc.***, 107 F.3d 568 (8th Cir. 1997). | $5,000,000 | $35,000 | 142.9:1 | $350,000 | 10:1 |

[6]This court held the district court abused its discretion by failing to set aside a default judgment with punitive damages exceeding $940,000. 169 F.3d at 547.